LOUISVILLE & N. R. CO. v. KELLY.

(Circuit Court of Appeals, Seventh Circuit.   October 1, 1894.)

No. 156.

1. MASTER AND SERVANT—NEGLIGENCE—RISKS OF EMPLOYMENT.
   In an action by a brakeman against a railroad company for injuries received by him while coupling cars in its service, an instruction to the effect that if the plaintiff knew that the cars were out of repair, that there were holes in the roadbed, and that the fireman in charge of the engine was incompetent, and, if he made no objection on that account, he was not entitled to relief, *held* properly refused.

2. SAME—NEGLIGENCE IN SELECTING FELLOW SERVANTS—INSTRUCTIONS.
   An instruction that in determining whether the fireman in charge of the engine was competent to handle it the jury should consider "that firemen, after a certain period of service as firemen, are promoted to engineers," is objectionable, as assuming that promotion of firemen to be engineers takes place as a matter of course, regardless of the capacity, habits, or temper of particular individuals.

3. SAME.
   It was error to refuse to instruct the jury that the fireman and brakeman were fellow servants, and that, if the latter was injured by the carelessness or unskillfulness of the former, the company was not liable if it had used due care in employing the fireman, and did not know, and could not by ordinary diligence have learned, of his incompetency or want of skill.

4. SAME—DANGEROUS MACHINERY.
   It was error to refuse to instruct the jury to the effect that if the cars were reasonably and ordinarily safe, and the plaintiff was injured by reason of the deadwoods on them, he cannot recover.

5. WITNESS—CREDIBILITY—IMPEACHMENT—INSTRUCTIONS.
   A request for an instruction that if a witness "has been successfully contradicted or impeached his entire testimony, except as corroborated, may be disregarded," was objectionable, since even the truthful testimony of an honest witness may be successfully contradicted.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

Action on the case by John W. Kelly against the Louisville & Nashville Railroad Company. Plaintiff obtained judgment. Defendant brings error.

J. M. Hamill, for plaintiff in error.

Seth F. Crews and George B. Leonard, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

WOODS, Circuit Judge. The case is briefly but sufficiently stated in the court's charge to the jury, as follows:

"The plaintiff, a former brakeman in the service of the defendant railroad company, has brought this suit to recover damages for alleged negligence of the defendant, resulting in crushing the plaintiff's right hand, and causing permanent injury. In the declaration divers specific acts of negligence are imputed to the defendant, including—First, the want of ordinary care in the employment of an incompetent locomotive engineer, whose unskillfulness, it is alleged in one portion of the declaration, caused the injury; second, the receiving by defendant, in the course of business, cars belonging to other companies, improperly constructed, and out of repair, and in a dangerous condition, thereby greatly increasing the hazard of the plaintiff in coupling the same, and that, in consequence of the drawheads or coupling apparatus of said cars being out of repair, the injury occurred; and, third, that its roadbed and yard at Mascoutah, the place of the accident, had holes and pitfalls, which prevented the plaintiff from obtaining a foothold and making the coupling of cars."

The trial resulted in a verdict and judgment for the defendant in error in the sum of $2,250. Error is assigned upon rulings of the court in giving and refusing instructions, and in admitting and excluding evidence.

The recitals in the court's charge of the acts of negligence alleged in the declaration, it is insisted, had a tendency to mislead the jury in respect to what certain particulars constituted negligence on the part of the plaintiff in error, but, the accuracy of the recitals not being questioned, the objection is necessarily untenable.

The concluding portion of the charge, it is contended, is objectionable, because it did not require the jury to consider whether the plaintiff had knowledge of the supposed incompetency of the fireman and defective condition of the cars and track. The court said:

"If you believe from the weight of the evidence that the plaintiff's injury resulted from the incompetency of the person handling the locomotive at the time, and that due care had not been exercised by the defendant in its selection, or that the cars the plaintiff may have been attempting to couple were out of repair and the risk of coupling thereby materially increased, and the defendant knew of the condition of such cars before the accident, or should have known it, or that the roadbed, where the switching by plaintiff was required to be made, had holes or pitfalls, by reason of which the injury occurred when he was attempting to make such coupling, then your verdict should be for the plaintiff."

This seems to have been intended, and probably was understood by the jury, to be a summing up of the law and facts of the case, and, in order to be in itself complete and fair, needed the qualification that the plaintiff himself was without fault, or was exercising due care, when he was injured; but the court had already charged quite

explicitly that to be entitled to a verdict the plaintiff must have proven his averment "that at the time of the accident he was in the exercise of due care and diligence," and as that proposition, by its terms, embraces every possible ground of recovery, the jury must have regarded it as applicable to the grounds restated and summed up in the last part of the charge.    Otherwise it had no application whatever.    Whether or not the plaintiff had knowledge of the danger he was incurring is a matter which is embraced in the question whether he was in the exercise of due care, and therefore needed not to be stated separately.    If an instruction limited to the significance of such knowledge alone was desired, it should have been embodied in a special request.

While the issues in the case are few and simple, and the evidence of correspondingly limited scope, there are before us, if our count is correct,—covering 13 printed pages of the record,—28 requests for special instructions, which the bill of exceptions shows to have been separately and severally presented, considered, and refused, and the errors assigned upon most of the rulings are insisted upon.    Intending no reflection upon counsel, we are constrained to suggest that there must be a point—it may be difficult to locate— where in sheer self-defense, as well as out of regard for the due administration of justice, a court may refuse to entertain such requests merely because of their excessive number or quantity.    Those before us contain frequent repetitions, varied only by references to different details of evidence.    Together they constitute an elaborate argument of the case, rather than a clear and succinct presentation of principles in their proper application under the issues to the controlling phases of the evidence.    Considered separately, some of them are embraced in the general charge; some of them are unsound throughout, or in minor particulars, which justified their rejection; while others, we find, ought to have been given.

In the order of presentation in the briefs, the first request was to the effect that if the plaintiff knew that the deadwoods of the cars he was attempting to couple were out of repair, that there were holes and pitfalls in the roadbed, and that the fireman in charge of the engine was incompetent, and remained in the service of the company without making objection, and without receiving any promise that the causes of danger mentioned should be removed, he was not entitled to relief.    This was properly refused.    If the defendant in error knew that the deadwoods were out of repair, he must, in all probability, have acquired the knowledge on the spot; and, consistently with the terms of the instruction, his supposed knowledge of the condition of the track and of the incompetency of the fireman as an engineer may have come to him so recently as to have afforded him no opportunity to make objection or complaint.    Besides, even if he had the supposed knowledge, it was a question for the jury whether or not, under the circumstances, he ought to have attempted to make the coupling, and in so doing was himself negligent, or to be considered as having voluntarily assumed the risk of his act.    The question was essentially one of contributory negligence, and the instruction should have been so framed

as to leave it to the jury. Railroad Co. v. Mares, 123 U. S. 710, 8 Sup. Ct. 321. Of course, there may be cases so clear as to justify the taking of the question from the jury. Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125; Bunt v. Mining Co., 138 U. S. 485, 11 Sup. Ct. 464.

The next request contains the objectionable proposition that "if the plaintiff knew, or had the same means of knowing," the fireman's incompetency "as the defendant, then he cannot recover for his injuries." The railroad company owed to the defendant in error the duty to use due care in selecting firemen, engineers, and others with whom he was required to work, and to that end was bound to a diligent use of its means of knowledge; but the defendant in error was under no duty in that respect, and therefore could be affected only by the knowledge which he had,—including what was within his observation at the time of the injury. But, as already stated, if he had actually known the fireman's incompetency, the question would have been one for the jury.

The next request was to the effect that in determining whether the fireman was competent to handle an engine to switch cars at a station the jury should consider how long he had been engaged as a locomotive fireman, what were his capacity and aptness for learning to handle an engine, how often before he had handled an engine on similar occasions, whether firemen frequently do switching before being promoted to engineers, "that firemen after a certain period of service as firemen are promoted to engineers," etc. The last expression is objectionable. It assumes it to be a fact that promotions from the place of fireman to that of engineer were of uniform, or at least customary, occurrence "after a certain period of service as fireman," without regard to the capacity, habits, and temper of particular individuals. There was no proof of such custom; none such, of course, has ever prevailed; and doubtless the jury would have apprehended the intended meaning. But error assigned upon the refusal of an inaccurate statement cannot be allowed to prevail on the assumption that the proposition would have been understood by the jury in the proper, rather than in the literal and erroneous, sense. This entire request, indeed, while not irrelevant or technically objectionable except in the particular stated, has only a collateral bearing upon the ultimate and controlling point of inquiry, which was not so much whether the fireman was in fact incompetent as whether the company was to blame for his being in charge of the engine at the time in question, —assuming that the injury complained of was attributable to his unskillful management. Who put the fireman in charge of the engine? If the engineer, was he, in respect to that act, a representative of the company, as vice principal, or was he only a fellow servant of the fireman and Kelly? If a vice principal, did he know or have reason to believe, from past experience or otherwise, that the fireman was not fit to be in charge of an engine when employed in switching? If the engineer was only a fellow servant of the fireman and brakeman (Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914), had he been authorized by the master mechanic to-

leave his engine in charge of the fireman, as he did in this instance? And, that being so, was the master mechanic guilty of negligence in giving that authority, in view of the general practice, if such was the practice, of railroad management to permit firemen to do that kind of work, and in view of the knowledge which he had or ought to have had of the character and ability of this fireman? Railroad companies are certainly not required to employ skilled engineers as firemen, and, if it is the prevailing custom of engineers to leave the firemen in charge of their engines when switching or similar work is to be done, then it is to be presumed that brakemen, when they engage or continue in their employment with the knowledge of the custom, assume the additional hazard which the custom involves, and can be entitled to compensation from the company for injury caused by a fireman's incompetent management of an engine only when his fitness was below what ought to be required of firemen, and when the fact of unfitness was known, or ought reasonably to have been known, to the master mechanic, or other like representative, of the company.

The court was asked to instruct in substance that the fireman and brakeman were fellow servants, and that, if the latter was injured, either by the carelessness or unskillfulness of the former, the company was not liable if it had used due care in employing, and did not know, or by ordinary diligence would not have learned, of his incompetency or want of skill. The only objection made to this is that it assumes that Kelly knew of the fireman's want of skill before he was injured. We do not perceive that to be so, or, if it were, that it would be a tenable objection. That the two men were fellow servants is beyond dispute, and that the company, being itself free from negligence as supposed, was not liable to either for an injury, whether caused by the unskillful or negligent conduct of the other, is no less certain. The instruction should have been given.

The court refused to instruct to the effect that if the cars in the coupling of which the plaintiff was hurt were received by the defendant from other railroads, and were "ordinarily and reasonably safe for the purposes for which they were used," the defendant, as a common carrier, was bound to receive and transport them over its line, and, if the plaintiff was injured solely on account of the deadwoods on the cars, he cannot recover. This, it is objected, would have exacted of the defendant only ordinary care, "while the law requires that proper care should be exercised." But by the instruction the cars were to be reasonably as well as ordinarily safe, and that clearly implies good repair or proper condition. Anything less than reasonable is not good or proper. The refusal to give this instruction or an equivalent was error.

Another request was to the effect that, if the cars were reasonably and ordinarily safe, the plaintiff cannot recover on account of the deadwoods or bumpers on them; or, if there were defects in the cars which did not contribute to the injury, he could not recover on that account. We perceive no valid objection to either of these propositions. It may be that they are embraced by im-

plication in some of the expressions of the general charge, but neither proposition is distinctly stated. Jurors are not trained lawyers, and, notwithstanding a general charge covering the issues of a case, it is the duty of the court, on proper request, to give to the jury a statement of any distinct doctrine or proposition which is fairly and justly applicable to the issues or to an important phase of the case.

An instruction asked in respect to the failure of the plaintiff to use a coupling pin was framed upon the theory that he had been furnished with that implement, but his testimony was to the contrary, and uncontradicted.

The court might well have given the instruction asked to the effect that, if the plaintiff's injury was purely accidental, he could not recover, but that proposition is so clearly implied in the general charge that this refusal by itself could hardly be deemed essential error.

In the last request, after mention of considerations which should properly affect the credit of witnesses, the court was asked to instruct that, if a witness "has been successfully contradicted or impeached, his entire testimony, except as corroborated, may be disregarded." If taken literally, this would be misleading. It does not express correctly the meaning of the maxim, "false in one thing, false in everything." The truthful testimony of an honest witness may be "successfully contradicted." The maxim or rule deduced from it applies only when the witness is shown to have been false in a material part of his testimony, though it is of course to the discredit of a witness if his testimony has been in any respect intentionally untrue.

We are of opinion that the court erred in permitting witnesses to testify what they had heard said concerning the incompetency of the fireman who was in charge of the engine when the defendant in error was injured. It is insisted that the testimony was not offered for the purpose of proving the fact of incompetency, but in order to show notice of the fact to the master mechanic of the plaintiff in error, to whom was intrusted the duty of employing the operatives of the road, including the engineers and firemen. But the contrary is apparent. It was only incidentally and upon cross-examination that the conversation of which proof was made was shown to have occurred in the presence of the company's master mechanic; and, having occurred six months, and probably more than a year, before the time of the injury, it did not constitute or fairly tend to prove notice of incompetency at that time.

Other points have been discussed, but we do not deem it necessary to consider or state them. The judgment of the circuit court is reversed at the cost of the defendant in error, and the cause remanded, with instruction to grant a new trial.