# WRIGHT v. CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY.

[No. 19,976.   Filed February 27, 1903.   Motion to modify mandate overruled May 20, 1903.]

TRIAL.—*Verdict.*—*Answers to Interrogatories.*—*Conflict.*—The general verdict determines all issues in favor of the party recovering the same, and the verdict will stand as against a motion for judgment on answers to interrogatories unless the answers are in irreconcilable conflict therewith. *p. 588.*

TRIAL.—*General Verdict.*—*Interrogatories to Jury.*—*Presumptions.*—All reasonable presumptions will be indulged in support of the general verdict, and against answers to interrogatories.  *p. 589.*

SAME.—*Verdict.*—*Answers to Interrogatories.*—*Conflict.*—The findings of the jury in answer to interrogatories override the general verdict only when both can not stand, the conflict being such as to be beyond the possibility of being reconciled by any state of facts provable under the issues.  *p. 589.*

SAME. —*Injury to Brakeman.* —*Dangerous Nearness of Switch Target to Track.*—*Verdict.*—*Interrogatories.*—*Conflict.*—In an action against a railroad company by a brakeman for injuries sustained by him by being struck by a switch target while he was attempting to get on the cab of an engine, the complaint alleged that the cause of the injury was the negligence of the defendant in placing the switch target dangerously near the track.  *Held,* that, as against a general verdict for plaintiff, it will not be presumed that the defendant was not guilty as charged, where the answers to interrogatories to the jury did not expressly so find.  *pp. 589, 590.*

MASTER AND SERVANT. —*Personal Injuries.* —*Knowledge of Danger.* —*Assumption of Risk.*—The mere fact, that a brakeman knew that a certain switch target was improperly located too near the track, will not prevent a recovery for personal injuries sustained thereby, unless it is further shown that he knew and appreciated the dangers thereof, and that he had sufficient time and opportunity for making objections.  *pp. 590, 591.*

From Clark Circuit Court; *J. K. Marsh,* Judge.

Action by William Wright against the Chicago, Indianapolis & Louisville Railway Company. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*H. L. Means, G. H. Voigt, W. B. Moody, Carroll & Carroll* and *B. H. Farnsley,* for appellant.

*M. Z. Stannard, E. C. Field, W. S. Kinnan* and *H. R. Kurrie,* for appellee.

MONKS, J.—This was an action brought by the appellant to recover damages for personal injuries alleged to have resulted from the negligence of the appellee. A trial of the cause was had before a jury, a general verdict being returned in favor of the appellant. The jury also returned answers to a number of interrogatories submitted by the court at the request of the appellee. On motion of appellee

the court rendered judgment for appellee on the answers to the interrogatories, notwithstanding the general verdict. The assignment of errors calls in question only the action of the court in so rendering judgment for the appellee on the answers of the jury to the interrogatories. In determining the questions presented, we can look only to the complaint, answer, general verdict, and 'the answers to the interrogatories.

Omitting the merely formal allegations of the complaint, it is alleged that the plaintiff, on the 2d day of July, 1898, was a brakeman on one of the defendant's freight-trains known as a "circus train;" that about 12:30 o'clock on the morning of said day, the said train was at the city of Greencastle, Indiana; that the plaintiff was one of the crew operating said train, and was subject to the order and direction of the conductor in charge thereof, and that it was his duty to obey the orders of said conductor; that the engine of said train was engaged in switching cars, and that the plaintiff was ordered by the conductor to assist in the switching, by coupling the cars and throwing the necessary switches, and that in discharging this duty it was customary and necessary, by the rules of the company, that the plaintiff should ride on the cab of the engine, in moving from one point on the track to another; that after having transferred the cars the plaintiff was ordered to throw the switch so that the engine could move to another track; that he threw the switch, signaled the engine to back, and as it moved back he attempted to get on the cab of the engine, as it was his duty to do; that he placed one foot on the lower step of the cab of the engine, and before he could place his other foot on the step the engine ran opposite to a switch-target, striking the plaintiff's foot and leg against the fans thereof, without fault upon his part, thereby throwing him from said steps under the wheels of the engine, and before he could extricate himself he was run over by said engine, one foot being entirely severed, and other serious and painful injuries being

inflicted upon his person, from which he has suffered great physical pain and anguish, has been put to great expense in buying medicines and in securing proper medical aid, and has been permanently injured and disabled, and rendered incapable of performing any manual-labor; that said target which plaintiff was run against was negligently and carelessly constructed, and placed by defendant-dangerously and unnecessarily near the track, "and closer to the track than such targets are usually placed," and was negligently and carelessly permitted to remain in that position and condition; that the night was dark, no light was placed on the target, or in or about it, and that the plaintiff could not see it; and that he did not know of the facts which rendered the same dangerous, nor could he have known them by the exercise of ordinary care and diligence. Knowledge by the defendant of the defective condition is alleged, and that said injury resulted wholly from the negligence of the defendant, and without any fault upon the part of the plaintiff. Appellee filed a general denial to the complaint.

The facts established by the findings of the jury in answer to interrogatories may, in narrative form, be summarized as follows: Appellant, a man of mature years, had for twelve years been a brakeman on railroad trains, and had been employed by appellee in the capacity of brakeman about two years preceding the accident in question. The first year and a half of this time he worked on the division of appellee's road extending from New Albany to Bloomington, and during that time was frequently in the yards at New Albany and Bloomington, and at intermediate points on this division. The last six months before the accident he worked on the division between Bloomington and Lafayette, and during the months of May and June, 1898, he made seventeen trips through Greencastle on local freight-trains as brakeman, and on some occasions did switching in appellee's yards at Greencastle. At both the Bloomington and the New Albany railroad yards the appellee maintained switch-stands or

targets during the appellant's service of about a year and a half on said division of railroad. The switch-stands in both said yards were of the same pattern as those in use by the appellee at the time of the accident in question. The appellee, at and before the date of the accident in question, maintained in its railroad yards at the different places on its railroad split switch-stands substantially at the distance of three feet nine and one-fourth inches, and stub switch-stands substantially at the distance of four feet, from the center of the stem of such stands to the nearest point of the ball of the rail next thereto; these being the standard distances on appellee's road for placing such switch-stands. On July 2, 1898, well regulated railroads maintained their split and stub switch-stands in their railroad yards at substantially three feet nine and one-fourth inches to four feet from the center of the stem of such stands to the nearest point of the ball of the rail next thereto. Appellant had opportunity on at least five or six occasions before the date of the accident in question to observe the distance between the track of the main line of railroad and the main line of the side-track at or near the place where he was injured. On the night of his injury, and just before he was injured, appellant turned the switch in question, having at the time his lighted lantern in his hand or upon his arm, and, at the time of turning the same, he ascertained that there was no light on the switch-stand. He was vested with authority to control the fireman and the movements of the engine at and before the time he was injured, but when the engine backed toward the westward the appellant had no opportunity, before he was injured, to give any signal to stop said engine. After receiving an order from his conductor to open the switch, switch two of the cars on to the main track, and come back to switch two more cars on to the main track, he, about 12:28 o'clock a. m., caused the work of switching to be begun; the conductor opening the switch the first time, and appellant assisting in the work of switching the cars from

the main side-track on to the main track, giving the neces-
sary signals in so doing.  Before the accident the appellant
handled and adjusted the switch-target, first closing and
then opening the same, and while so doing had his lighted
lantern in his hand or on his arm, and at the time ascer-
tained that there was no light on the switch-stand.  After
the first two cars were switched on to the main track, appel-
lant and the fireman attempted to switch two more cars from
the main side-track to the main track.  As the engine re-
turned from the switching of the first two cars, appellant
stepped off the engine a few feet west of the switch-target
to throw the switch, went to the switch, and, by operating
the target, adjusted the switch in such a way as to connect
the main track with the cross-over track.  In so doing he
saw and handled the switch-target.  He crossed from the
north to the south side of the main track, and signaled the
fireman in charge of the engine, and crossed back to the
north side of the main track, to a point about five feet east
of the switch-stand.  In obedience to the signal the engine
began moving along the main track westwardly, running at
the rate of from six to eight miles an hour; and as it passed
the point where appellant stood he attempted to board it,
and, in his haste to get on the engine, failed to think about
the switch-target—the engine backing toward the west at
the time—and in boarding the engine he was struck by the
switch-target and injured.  There was no evidence that the
headlight on the engine was burning, and it is found that
under the circumstances the appellant could not, by the use
of his lantern, have ascertained the location of the switch-
stand in question while the engine was backing toward the
westward.

The general verdict necessarily determined all material
issues in favor of appellant, and, unless said answers to the
interrogatories are in irreconcilable conflict with the general
verdict, the court erred in rendering judgment in favor of
appellee on said answers.  *Consolidated Stone Co.* v. *Sum-*

*mit,* 152 Ind. 297, 300, and cases cited. By the general verdict, therefore, the jury found that appellee was guilty of the negligence alleged; that appellant did not assume the risk of the negligent construction and placing of said switch, and the failure of appellee to place a light on the switch-target; and that appellant was not guilty of contributory negligence.

It is insisted by appellee, however, that said answers of the jury to the interrogatories show: (1) That appellee was not guilty of the negligence charged; (2) that appellant assumed the risk of the alleged defective construction and placing of the switch by which he was injured; (3) that he was guilty of negligence which directly contributed to his injury.

The rule is that all reasonable presumptions will be indulged in support of the general verdict, and against the answers to the interrogatories. *Consolidated Stone Co. v. Summit, supra,* and cases cited; *City of South Bend* v. *Turner,* 156 Ind. 418, 54 L. R. A. 396, 83 Am. St. 200; *Southern Ind. R. Co.* v. *Peyton,* 157 Ind. 690, 697, 698.

The findings of the jury in answer to interrogatories override the general verdict only when both can not stand, the conflict being such as to be beyond the possibility of being reconciled by any state of facts provable under the issues in the cause. *Consolidated Stone Co.* v. *Summit, supra; City of South Bend* v. *Turner, supra; Southern Ind. R. Co.* v. *Peyton, supra.*

Under this rule it is clear that the facts found by the jury in answer to the interrogatories were not in irreconcilable conflict with the general verdict. The answers do not show that the switch-stand at Greencastle by which appellant was injured was either a stub or a split switch-stand, nor that the switch-stand was not nearer than three feet nine and one-fourth inches from the ball of the rail next thereto, nor that the same was not negligently placed and maintained dangerously near the railroad track, "and

closer to the track than such switch-stands are usually placed," as alleged in the complaint and found by the general verdict. We can not presume, as against the general verdict, that appellee was not guilty of the negligence charged, nor that said switch-stand at Greencastle was either a stub or a split switch; nor can we presume that it was not negligently constructed and maintained by appellee dangerously and unnecessarily near the railroad track, as alleged in the complaint and found by the general verdict. Appellee may have had stub and split switches in use, at the time of appellant's injury, of the pattern of those at Bloomington and New Albany, as shown by said answers; but said answers do not show, as against the general verdict and the presumptions in its favor, that the switch-stand at Greencastle which caused the injury was not of a different pattern, or, if of the same pattern, that it was not negligently placed and maintained dangerously near the railroad track as alleged.

It is next insisted by appellee that the answers to the interrogatories show that appellant knew, or by the exercise of ordinary care could have known, how near to the railroad track said switch was placed at the Greencastle yards, and that therefore appellant assumed the risks and hazards thereof, if it was placed dangerously near said track. The jury was not asked what distance the switch-stand which caused the injury was from the railroad track, nor whether appellant knew, or could have known by the exercise of ordinary care, what the distance was from the railroad track. The answers do not show, as against the general verdict, and the presumptions indulged to support it, that appellant knew, or by the exercise of ordinary care could have known, the distance from said switch-stand to the railroad track. But even if they showed that he had such knowledge, they do not show that he knew or appreciated the dangers and hazards thereof. Unless he knew and appreciated the dangers and hazards thereof, it cannot be said that he assumed

the risks.  *Consolidated Stone Co.* v. *Summit, supra,* and cases cited; *Chicago, etc., R. Co.* v. *Lee,* 29 Ind. App. 480. As against the general verdict, it can not be said that the answers show that appellant ever saw said switch-stand before he opened and closed the switch on the night of his injury, or that in the exercise of ordinary care he could have seen it before that time.  If appellant first saw it on that night, and even if he then knew, or could by the exercise of ordinary care have known, that it was dangerously near the track, and knew and appreciated the hazards and risks thereof—things not shown by the answers to the interrogatories—it could not be said as a matter of law, as against the general verdict, that appellant, by continuing to assist in switching the cars until his injury, assumed the risks and hazards of said switch-stand being dangerously near the railroad track, for the reason that the knowledge thereof came to him so recently that he may have had no opportunity before the injury to make objection or complaint to anyone representing the master.  *Louisville, etc., R. Co.* v. *Kelly,* 63 Fed. 407, 409, 11 C. C. A. 260, 263.

It is next insisted by appellee that the answers show that appellant's "own negligence contributed to the production of his injuries."  After a careful examination of the answers to the interrogatories, we are constrained to hold that as against the general verdict they do not show that appellant was guilty of negligence which directly contributed to his injury.

It follows that the court erred in sustaining appellee's motion for a judgment on the answers to the interrogatories, notwithstanding the general verdict.  We are of the opinion, however, that justice requires that a new trial of the cause be ordered.  Judgment reversed, with instructions to the trial court to award a new trial, and for further proceedings not inconsistent with this opinion.