## RAILROADS—NEGLIGENCE—FENCES—MASTER AND SERVANT.

[Lucas (6th) Circuit Court, February 11, 1905.]

Hull, Haynes and Parker, JJ.

Mary E. Isley v. Wabash Ry.

1. Railroad must Keep Fences in Repair, and is Liable for Injuries Resulting from Failure.

A railroad company is bound to keep its fences in repair, so as to keep animals off of its right of way; and where one of the company's engineers is injured by the derailing of his engine, caused from a collision with cattle that had got upon the track through a defective fence, the company is liable therefor, in the absence of contributory negligence on the part of the engineer.

2. Engineer Acting as Prudent Man not Chargeable with Negligence.

A railroad engineer is not chargeable with contributory negligence, where the evidence shows that he sounded the proper whistle signals immediately after discovering cattle upon the track, and exercised ordinary care and prudence in the management of his train from the time he saw the cattle until the happening of the injury complained of.

3. Doctrine of Assumption of Risk not Applicable where Servant cannot Exercise Option of Remaining in Employ, etc.

The doctrine of assumption of risk is based upon the opportunity the servant has to exercise his option or election to remain in the employment and proceed with the work of the master, and does not apply where the servant is met or confronted by an emergency which does not afford him an opportunity to exercise such election.

Error to Lucas common pleas court.

**Harvey Scribner,** for plaintiff in error.

**A. L. Smith,** for defendant in error.

## HAYNES, J.

This suit was brought by Mrs. Isley, as administratrix, to recover damages for the death of her husband, caused, as was alleged, by the negligence of the railroad company. The husband, Mr. Isley, was an engineer on the road and the train, on a certain day, was derailed and he was killed. The cause came to trial before the court and jury, and upon the conclusion of the plaintiff's evidence, the court took the case from the jury and directed a verdict for the defendant, upon the ground, it is alleged, that the decedent himself was guilty of negligence. At any rate, he took the case from the jury, and the case has been brought here upon a transcript of the evidence and we are called upon to review the action of the court.

It appears that in October of a certain year that the decedent, in charge of a locomotive of a freight train, was proceeding along the track near a place called Ashwood, in Defiance county, going northward towards Toledo; and discovered some cattle upon the track, and immediately gave the alarm for brakes, etc., but the locomotive struck one of the animals and was derailed, and the engineer was killed. The fireman, who was not called as a witness, was not killed.

Now to come to particulars a little more in regard to the matter: The claim is, that the railroad was not properly fenced, or that the fences had become out of repair, and that the railroad company was not keeping the fences in that condition that was required by the statutes of the state of Ohio; and that in consequence of that the cattle of a certain farmer had broken through the fence and had gone upon the railroad track, and one of them at least was run over by the locomotive. It is proper to say here that the son of the owner of the animals says that they were put in a wood field near his father's house on the morning of this same day, at about 6 or 7 o'clock; that at noon he went out to look for the cattle and found that they had escaped, and, following their tracks, he found they had escaped through this place in the fence and had gone into a ditch that was there, as I understand, on or near the railroad tracks, and had passed down to a wagon road—the distance is not given, but not far away;—they had turned into that road and had gone a distance, according to the evidence,—it is a little blind,—past the point where it seems they were usually let out of the wood lot and kept on down the road; they finally passed from the road upon the railroad track, there being no intervening fence or obstruction, and some were on the track at the time the injury occurred. A portion of them, after the injury, returned the way they had come back to the field.

Isley v. Railway.

A farmer was called who testified that he saw the locomotive just before it struck the animals. They were running upon the track. He heard the alarm, and heard the locomotive stop. He was quite a little distance away, so far at least, he says, that the animals in front of the locomotive looked like small calves. It would seem from this that the animals were quite a distance, or some distance, at least, from the point where they had escaped from the wood lot and gone on the track.

The testimony of two brakemen was taken and was to the effect that they were both of them in the caboose at the time the first signal was given, and they stated what the usual signals were when cattle were on the track—short whistles is the signal they all state, for the brakemen to get to their places to protect the train. The first one testified that he went out to the front of the car, perhaps on the car. Very soon, a moment or two afterwards, he heard the engineer putting on air brakes on the front of the train and the signal sounded for brakes. The other brakeman was in the caboose; he was up at the lookout; he heard the sound; he opened the window and went out on top of the car; he could see an animal running along at the side of the train, and soon after going out there, or very quickly, the whistles were sounded for brakes. The conductor of the train—he does not testify—was in the car; he started for some brake. Now this last brakeman says he thinks that at the time the whistle sounded that probably the train was half a mile from where the injury occurred, and that consequently the train must have run about a half a mile before it ran over the animal—he speaks of it as taking a glance.

Now nobody testifies as to the condition of affairs at the time the engineer saw the cattle, whether they were simply within the lines of the company's right of way, whether they were near or on the track, does not appear. Just how they were situated we do not know. All we do know is, that the engineer whistled, sounded the whistle, to frighten the cattle off; that the brakemen were taking their places at the brakes, and that the engineer put on the air brakes, the whole thing happened very quickly—it was a train of fifteen cars.

Now with this state of facts it is said that the court found that the decedent was guilty of negligence. However it does not state in the record the grounds upon which he put it; but that he simply directed a verdict. It is argued by counsel for the defendant that the plaintiff ought not to recover because the decedent is chargeable with knowledge of this place in the fence, if it was broken; that he assumed all defects that might be in the fence near the track; assumed all liability of cattle getting in upon the track. Well, there are some cases

Lucas County.

on both sides of that question as to whether he was bound to know this. In 4 Thompson, Negligence Sec. 4791 is a statement of the law upon this subject, in which the author says:

"On this subject we find irreconcilable decisions. On the one hand, if the cattle get upon the track through a failure on the part of the railroad company to keep its fences in repair, and if the nonrepair of its fences is a permanent condition, and not the result of transient, unforeseen and consequently unanticipated negligence of the company, then the employe is deemed to assume the risk of injury from that source of danger, and this is so, although the failure to fence the track is a violation of the statute law. Directly opposed to this, we learn from another court that a railroad company is liable to a brakeman for its failure to maintain fences as required by statute, in consequence of which an animal gets upon the track, causing a derailment of the train and injury to the brakeman. On clear grounds, where a railway train man is killed or injured from defects in a track or in a roadbed, existing through the negligence of the company, it will be liable, although the primary cause of the derailment is the running into an animal on the track."

We do not think that the engineer was at fault in this matter. The company was bound to keep its fences in repair, was bound to keep animals off of the right of way; and this statute expressly provides that for any injury that results from cattle straying or getting upon the track that the company shall be liable. We do not think there is any negligence chargeable to this engineer in that respect. Simply the case is a case where cattle are found straying upon the right of way, and perhaps upon the track, and are seen by the engineer, and the question is, whether the engineer exercised ordinary care and prudence in the management of his train from the time he saw the animals until the time that the injury occurred. Now we must say from all this evidence, we do not see any testimony sufficient to charge this engineer with any negligence. It would seem from the testimony that he acted with reasonable care; he sounded his whistle for the cattle; immediately, almost immediately thereafter, he was putting on his brake, calling for brakes, calling his men to their stations. He seemed to be doing actively and energetically what a prudent man would do under the circumstances.

Now the Supreme Court of this state has made some declarations in regard to the duty of engineers in cases of that kind, in a case that went up from Sandusky county, *New York C. & St. L. Ry.* v. *Kistler,* 66 Ohio St. 326 [64 N. E. Rep. 130]. I read from page 338:

### Isley v. Railway.

"While engineers of locomotives are expected from their training, experience, and the nature of their duties, to be equal to almost any emergency in the management of their trains, yet it must be remembered in their favor that they have mind and nerves the same as other people, and that when they are suddenly and unexpectedly confronted with imminent peril or danger to themselves or to the persons and property in their charge, by obstructions on the track or about to go thereon, they cannot be held to a strict course of conduct to prevent injury to persons or property not connected with the train, so that the action taken is in good faith, and at the time believed to be the best. When a person or animal is seen approaching the track, and it becomes evident that he or it will not stop but attempt to cross, it is sometimes safer to slow down or stop the train, and sometimes safer to increase the speed and get the train across first. The course to be pursued must be instantly determined by the engineer at the peril of himself and the persons and property in his charge, and the course selected by him and carried out in good faith in the face of such peril, and in view of the surrounding circumstances, cannot constitute negligence on his part, even though others might be able to suggest and point out afterwards, that a different course would have been less liable to result in injury. As to the persons and property in his charge, the engineer must use the greatest care, but as to persons and property not connected with the train, he must use only ordinary care. He must therefore be allowed to determine for himself in good faith upon the spur of the moment, and in view of the peril before him, the course to be pursued for the safety of the persons and property in his charge, without being called to a very strict account by those to whom he owes only ordinary care.

"What was said by this court in *Express Co.* v. *Smith,* 33 Ohio St. 511, at page 519, is applicable to such cases: 'There is an *ex post facto* wisdom, which, after everything has been done, without success, can suggest something else that should have been attempted; but this is a sagacity much more astute than ordinary human foresight and can hardly furnish a fair rule by which to determine the propriety of what has been done in good faith, and with judgment exercised under the best light afforded.'"

A similar doctrine is found in the case of *Louisville & N. Ry.* v. *Kelly,* 63 Fed. Rep. 407 [11 C. C. A. 260; 24 U. S. App. 103]. We are unable to see any grounds for taking this case from the jury: Judge Parker will make a statement upon a point in this case.

Lucas County.

**Parker, J.**

Counsel for the defendant in error urge upon the hearing that the doctrine of the assumption of risks applied here, even though the engineer had no reason to anticipate the presence of these cattle upon the track. That it applied, after he discovered the cattle upon the track; that when he then decided to go forward with his locomotive he assumed the risk of the results that might follow. Now as we understand it, the doctrine of assumption of risks is based upon the opportunity the servant has to exercise his option or election to remain in the employment and proceed with the work of the master; and it does not apply to cases where the servant is met or confronted by an emergency that does not afford him an opportunity to exercise such election. Manifestly under circumstances like those shown in this case, he could not lay down his work, he could not leave his locomotive and say, "I will no longer remain in the employ of this railroad company, because, if I do, I assume the risk that may result from these cattle being upon the track ahead of me." The doctrine of the assumption of risk is not applicable to such a case at all. If he went forward negligently, it would involve the doctrine of contributory negligence. If the doctrine of assumed risk should apply, then it would follow that the master, the railroad company, would never become liable, no matter how negligent it may have been in allowing cattle to come upon the track. No cause of action ever could accrue to the engineer, because he had assumed that risk. That would be very different from holding that his cause of action was defeated by his subsequent contributory negligence. Upon that subject I think this case of *Louisville & N. Ry.* v. *Kelly, supra,* is in point. Indeed, so far as we can discover, there is no break in the line of authorities as to the basis of this doctrine. I will read from page 409 of this case, a single paragraph:

"In the order of presentation in the briefs, the first request was to the effect that if the plaintiff knew that the deadwoods of the cars he was attempting to couple were out of repair; that there were holes and pitfalls in the roadbed, and that the fireman in charge of the engine was incompetent, and remained in the service of the company without making objection, and without receiving any promise that the causes of danger mentioned should be removed, he was not entitled to relief. This was properly refused. If the defendant in error knew that the deadwoods were out of repair, he must, in all probability, have acquired the knowledge on the spot; and, consistently with the terms of the in-

struction, his supposed knowledge of the condition of the track and of the incompetency of the fireman, may have come to him so recently as to have afforded him no opportunity to make objection or complaint. Besides, even if he had the supposed knowledge, it was a question for the jury whether or not under the circumstances, he ought to have attempted to make the coupling, and in so doing was himself negligent, or to be considered as having voluntarily assumed the risk of his act. The question was essentially one of contributory negligence, and the instruction should have been so framed as to leave it to the jury.'' (Citing cases.)

**Haynes, J.**

It follows that the judgment will be reversed and the cause remanded for a new trial.

**Hull, J., concurs.**

---

## CRIMINAL LAW—JUDGMENTS AND DECREES.