CHICAGO & ERIE RAILROAD COMPANY *v.* LAWRENCE, ADMINISTRATRIX.

169    319
169    461

[No. 20,853. Filed November 27, 1906. Rehearing denied November 26, 1907.]

1. PLEADING.—*Complaint.—Uncertainty.*—A complaint, though uncertain, is good, if it substantially states a good cause of action. p. 324.

2. SAME.—*Complaint.—Uncertainty. —Redundancy.—Repugnancy.*— A complaint which states facts sufficient to constitute a cause of action, is not insufficient, because it also contains uncertain, redundant and repugnant allegations. p. 324.

3. SAME.—*Complaint.—Duplicity.—Demurrer.*—A demurrer will not raise the question of duplicity in a complaint. p. 324.

4. SAME.—*Motions to Separate and to Make More Specific.*—Where a complaint is so inconsistent, uncertain or repugnant as to mislead the defendant, he should move to separate the causes or to make the complaint more specific. p. 325.

5. SAME. —*Complaint.—Theory.—Trial.—Appeal.—Railroads.—Violation of Ordinance.*—A complaint averring with reasonable clearness that plaintiff's decedent was killed by reason of defendant railroad company's violation of a city ordinance in failing to keep a light on the front end of its moving train, is sufficient, where the trial was had on such theory, the theory adopted by the trial court controlling on appeal. p. 325.

6. SAME.—*Complaint.—Ignorance of Danger.—Railroads.—Collision with Car on Side-Track.*—A complaint showing that plaintiff's decedent, while riding on defendant's engine, was killed by its collision with a car on the side-track, sufficiently negatives decedent's knowledge of the proximity of such car, by alleging that he "did not know of, had no means of knowing, and could not see * * * the near approach of said engine to said coal-car." p. 325.

7. TRIAL.—*Instructions Covered by Those Given.*—It is not erroneous to refuse to give instructions requested which are substantially covered by those given. p. 326.

8. SAME.—*Instructions.—Railroads.—Collisions.—Notice.—Assumption of Risk.*—An instruction, in an action for the negligent killing of deceased, in violation of a city ordinance, by defendant's failure to carry a light on the front end of its moving train in the night, that if the decedent knew of such failure and continued in the service, he thereby assumed the risk of any injury caused thereby, is properly refused. p. 326.

9. MASTER AND SERVANT.—*Contracts.—Assumption of Risk.—Statutory Duty.—Ordinances.*—The doctrine of assumption of risk

rests in contract, and cannot relieve the master from the violation of a specific duty imposed by statute or municipal ordinance. p. 327.

10. TRIAL.—*Interrogatories.—Contributory Negligence.—Railroads.*—Answers to interrogatories showing that plaintiff's decedent was riding on a switch-engine; that while alighting therefrom in the night, he was caught between such engine and a car on the side-track and killed; that he had helped set such car on such track, and had announced that it would "clear," and that it was his duty to see that it was set so it would "clear," are not irreconcilable with a general verdict for plaintiff, there being nothing to show that such car remained where he set it. pp. 327, 330.

11. SAME. —*Interrogatories.—Verdict. — Inconsistency. — Presumptions.*—The general verdict controls the answers to the interrogatories to the jury unless they are in irreconcilable conflict; and all reasonable presumptions are indulged in favor of the general verdict, and none against it. p. 329.

12. SAME.—*Burden of Proof.—Contributory Negligence.*—The burden of proving contributory negligence is upon the defendant. p. 329.

13. APPEAL.—*Briefs.— Failure to Cite Transcript.—Evidence.*—Appellant's failure, in its brief, to cite the page in the bill of exceptions, where questioned rulings were made on the evidence, waives such questions. p. 330.

14. SAME.—*Weighing Evidence.*—The Supreme Court will not disturb a judgment, where there is some evidence on all of the material facts. p. 330.

15. TRIAL.—*Interrogatories.—Answers.—Motion to Make More Definite.—Words and Phrases.—"Clear."—Railroads.*—A motion to make more definite an answer of "no evidence" to an interrogatory asking whether decedent's answer, that a car set on a side track would "clear," meant that trains and their crews could safely pass without collision, is properly overruled, where there was no evidence showing that "in the clear" meant anything more than that engines and cars could pass without collision, and no evidence to show that decedent understood it to mean that the car was in far enough to enable engines with their crews to pass with safety. p. 332.

16. SAME.—*Interrogatories.—Answers.—Conjectures.*—Juries should not answer interrogatories, where the answers must be mere guesses or conjectures. p. 333.

17. SAME.—*Interrogatories.—Conditional Answers.*—Where the answering of an interrogatory to the jury is conditioned upon the jury's affirmative answer to a preceding one, and the answer to the preceding interrogatory is not in the affirmative, no answer is required to the subsequent one. p. 333.

18. TRIAL.—*Interrogatories.*—*Assumption of Facts.*—It is improper to submit to the jury an interrogatory which assumes the existence of a controverted fact; and it is proper to overrule a motion requiring a more definite answer thereto.  p. 333.

19. EVIDENCE.—*Duty to Set Cars "in the Clear."*—*Conclusions.*—*Question for Jury.*—*Railroads.*—It is improper to ask a witness "if it was one of the duties of the rear switchman * * * to determine when a car was set in on a spur track * * * so that an engine might pass with safety to the crew and all persons working or riding on the train," the duty of the switchman being a conclusion and being a question for the jury.  p. 334.

20. SAME.—*Custom of Using Railroad Engines in Switching.*—*Railroads.*—In an action for the death of plaintiff's decedent, caused by his being caught between a passing engine and a car on the side-track, evidence that defendant's custom was, and had been, to use railroad engines in the yards where the accident occurred, is immaterial.  p. 335.

21. SAME.—*Rules Governing Switchmen.*—*Secondary Evidence.*—*Railroads.*—In an action against a railroad company for negligently killing plaintiff's decedent, it is proper to exclude the question whether there were, at the time of the accident, any written or printed rules of the company, governing the duties of field switchmen in placing cars on the switches, the rules themselves being the primary evidence thereof.  p. 335.

22. SAME.—*Whether Decedent Could See Car on Side-Track.*—*Railroads.*—In an action against a railroad company for negligence in killing plaintiff's decedent, a switchman, who, as he was alighting from the engine with face to the rear, was caught between the engine and a coal-car standing on the side-track, the question whether decedent, if he had faced forward, could have seen such car, is improper, where the witness did not know the power of the lantern, the strength of decedent's vision, the density of the darkness or other circumstances; and such exclusion is harmless where the witness stated the radius of the lantern's light, and that there were no obstacles between decedent and such coal-car.  p. 335.

23. SAME.—*Rules Providing for Assumption of Risk.*—*Ordinances.*—*Railroads.*—In an action against a railroad company for the death of a switchman because of the company's violation of a city ordinance, evidence of a rule of the company providing that servants taking employment thereby assumed all risks incident thereto, including negligence of fellow servants, is not proper, since a company cannot contract against such negligence.  p. 336.

24. SAME.—*Rules Exhorting to Use Care.*—*Railroads.*—*Master and Servant.*—In an action against a railroad company for the death

of an employe, because of the company's violation of a municipal ordinance, evidence of a rule requiring servants to use care, not to incur unnecessary risks, and to do their duties with safety to themselves, is not material. p. 336.

25. RAILROADS.—*Violation of City Ordinance.*—*Negligence.*—Operation of an engine backward, in the night, without a signal light on the outer end of the tender, in violation of a city ordinance, constitutes negligence *per se*. p. 336.

26. NEGLIGENCE.—*Contributory.*—*Master and Servant.*—*Railroads.*—The facts that it was the deceased brakesman's duty to set cars on a side-track so they would "clear," that he set one and announced that it would "clear," and that, within five minutes thereafter, he was crushed between such car and a passing engine on which he was riding, does not conclusively show that he was guilty of contributory negligence, there being nothing to show that the car remained where he set it. p. 338.

27. EVIDENCE.—*Presumptions.*—*Duty.*—*Injury.*—Where it was a brakesman's duty to set a car on the side-track so it would "clear," it will be presumed that he did so, in an action for his death caused by his being crushed between such car and a passing engine on which he was riding, the burden of showing contributory negligence being upon the defendant. p. 338.

From Porter Circuit Court; *Willis C. McMahan*, Judge.

Action by Mary L. Lawrence, as administratrix of the estate of Lewis P. Lawrence, deceased, against the Chicago & Erie Railroad Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. Transferred from Appellate Court under §1405 Burns 1908, Acts 1901, p. 590. *Affirmed.*

*W. O. Johnson, John B. Peterson, Johnston, Bartholomew & Bartholomew, W. H. Gale* and *Ulric Z. Wiley,* for appellant.

*William J. Whinery* and *Otto J. Bruce,* for appellee.

HADLEY, J.—In its yards at Hammond appellant has a track running north and south known as "72." South of the middle there is a spur connected with "72" and running to the northwest. Appellee's decedent, Lewis P. Lawrence, was a switchman in the employ of appellant, and a member of a switching crew engaged in the Hammond yard. On February 8, 1904, at about 8:30 o'clock p. m., Lawrence

and the crew to which he belonged took a train of cars south on "72" beyond the spur intersection. The engine was backing, drawing the cars after it. The train having passed the spur, the direction was reversed, and going north a car of coal was "kicked" onto the spur. The train then proceeded north, the engine pushing the cars ahead of it, to a point one hundred yards or more north of the spur intersection. Here the train was stopped, and, to set an empty flat-car, also on the spur, the engine returned south, drawing the flat-car after it at the rate of about five miles an hour. Before the engine and flat-car were started, Lawrence and the other switchman got into the engine cab. The night was cloudy and very dark. The engine, which was backing, had a headlight in front looking north, but no light on the rear of the tender looking south, except a "bull's eye" light, in size and brilliancy the same as a signal lantern. As the engine approached somewhere near the spur intersection, Lawrence, standing on the west side of the cab, with signal lantern in hand, in the proper discharge of his duty in switching the flat-car, seized the hand-iron of the cab, and let himself down to the step leading to the ground. The coal-car that had been previously "kicked" onto the spur, at the moment Lawrence was alighting from the cab, was standing on the spur a short distance north of the spur frog, and about six and one-half inches west of the line described by the passing engine cab, and, while so on the engine step, Lawrence was caught and rolled between the coal-car and engine cab, and fatally injured. Appellee, as administratrix, brought this action to recover for the benefit of herself, as widow, and their minor children, on the ground that the death of her husband was caused by the negligence of the appellant. The complaint is in one paragraph, to which a demurrer for insufficiency of facts was overruled. On an answer of general denial the case was submitted to a jury, which returned a verdict for appellee, and answers to a large number of interrogatories.

Error is assigned on the overruling of the demurrer· to the complaint, the overruling of motions for judgment on the answers to interrogatories, and for a new trial.

The sufficiency of the complaint is questioned on the grounds of uncertainty, inconsistency and repugnancy. There is no ground for controversy with appellant that, if a pleading be so uncertain as not to state intelligibly a substantially good· cause of action or defense, it will be subject to demurrer for not stating a cause of action or defense, as ruled in *Snowden* v. *Wilas* (1862) 19 Ind. 10, and many other cases. This complaint, however, cannot be justly said to come within the rule. It does contain much unnecessary matter, and gives evidence that the pleader was not clear on what class of facts he should rest his case. The averments concerning the failure of the defendant to furnish the decedent's crew with such a switch-engine as was in common use in switch yards, and the failure of the defendant to have and maintain clearance posts at the place of injury, and its failure to have and maintain lights at that place, and the failure of the engineer in charge of the locomotive to warn the decedent of the dangerous proximity of the coal-car on the spur, and the violation of the appellant's rules in requiring the decedent to work overtime, are all matters that encumber and cloud the complaint, and the pleading would have been much strengthened as a model if they had been omitted. But if a good cause of action is in fact stated the complaint will not fall before a demurrer because of uncertainty, inconsistency, or repugnancy. *Coddington* v. *Canaday* (1901), 157 Ind. 243; *Tipton Light, etc., Co.* v. *Newcomer* (1901), 156 Ind. 348; *Sheeks* v. *State, ex rel.* (1901), 156 Ind. 508; *Frain* v. *Burgett* (1898), 152 Ind. 55. Neither will a demurrer reach duplicity in a pleading. *Rielay* v. *Whitcher* (1862), 18 Ind. 458; *Denman* v. *McMahin* (1871), 37 Ind. 241; *Jones* v. *Hathaway* (1881), 77 Ind. 14, 19.

The complaint is no worse than it was before answer, and if more than one cause of action is stated, or it is so inconsistent, uncertain, or repugnant as to mislead the defendant in the preparation of its defense, it should have made available its complete remedy by a motion to separate, or to make more certain and definite.

There is, however, running through the complaint, a chain of averments that indicate, with reasonable clearness, that the pleader chiefly counted upon the violation of an ordinance of the city of Hammond against running locomotives backward in the night-time without a brilliant and conspicuous light at the rear end thereof. A copy of the ordinance is set forth in the complaint, and the trend of the evidence indicates that this was the theory upon which the case was tried. Besides, this theory is made clear by the court in the charge to the jury. After calling attention to certain averments in the complaint relating to other alleged delinquencies of the defendant, the charge proceeds: "But the court instructs you, as a matter of law, that under the issues and evidence in this case, there can be no recovery on account of [the kind of engine used]. This will leave for your consideration the questions relating to the alleged violation of the alleged ordinance." Where the predominating theory of a complaint is doubtful or uncertain, the theory adopted by the parties and the trial court will be adhered to on appeal. *Reeves* v. *Grottendick* (1892), 131 Ind. 107; *Anderson, etc., Mach. Works* v. *Myers* (1896), 15 Ind. App. 385.

The only specific objection to the complaint upon this theory is that there is no charge in the complaint that appellee's decedent was ignorant of the location of the coal-car standing on the spur-track, and its dangerous proximity to the main track over which the engine was passing, at the time of the injury, and that we must presume that he did know of its position, and, having exposed himself as the engine passed, was guilty of con-

tributory negligence. With respect to this point the complaint is as follows: ''Said decedent did not know of, had no means of knowing, and could not see by reason of the darkness and the defendant's failure to provide proper headlights and equipment of said engine, the near approach of said engine to said coal-car, and the danger to which he was thereby exposed.'' Omitting the qualifying sentences, the averment is that the decedent did not know of the near approach of said engine to said coal-car. This is equivalent to alleging that he did not know where the coal-car was, and is sufficient.

A general objection is made to the refusal of the court to give certain instructions requested by appellant. Excepting the eleventh and twelfth, every point stated in the others was fully covered by those given by the court, and quite as favorable to the defendant as it had the right to ask. The eleventh and twelfth were refused, and rightly so, because they contained a misstatement of the law. Both requests were to the effect that if the decedent knew, or by the exercise of reasonable diligence might have known, at the time of his injury, that the locomotive being used was not equipped with a headlight on the rear end thereof, and had a high, square tank, and the injury resulted from the absence of such light, and if it was found that the decedent continued in the employ of the defendant, and to work on and about such engine, after knowing of the dangers attendant upon the use of an engine so equipped as a switch engine, then, the jury was instructed, as a matter of law, that the decedent assumed the risk of all injuries that might reasonably be expected to flow from the use of such engine, in such business.

It will be borne in mind that the negligence charged in the complaint, and relied on, is the violation of an ordinance of the city of Hammond, in these words:

"Section three. Every locomotive engine, railroad car, or train of cars, running in the night-time on any railroad track in said city, shall have and keep while so running a brilliant and conspicuous light on the forward end of such locomotive engine, or train of cars, and in case any such engine, car, or train shall be run backward at such time, such lights should be kept at the rear end thereof."

This ordinance imposed on the defendant a fixed and positive duty to keep a brilliant and conspicuous light on the rear end of its locomotives when running backward in the night-time within the city. §3541 Burns 1901, cl. 42, Acts 1895, p. 180.

The doctrine of assumed risk rests in contract and does not apply to relieve a defendant from the consequence of a breach of a specific duty, prescribed by statute or municipal ordinance. *Baltimore, etc., R. Co.* v. *Peterson* (1901), 156 Ind. 364, 374; *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664; *American Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644.

Appellant earnestly insists that the answers to interrogatories, in effect, show that the decedent was guilty of negligence that contributed to his injury, and that its motion for judgment thereon ought to have been sustained. The answers disclose that Lawrence was of the age of thirty-four years, five feet, four inches tall, an experienced switchman, of ordinary intelligence, and possessed of all his faculties. He had been employed by appellant as a switchman in the Hammond yard for ten months before the injury, and had been working for three days with and about the particular engine from which he was alighting when hurt. He commenced working with said engine at 8 o'clock a. m. and continued until he was hurt, about 8:30 p. m. The engine had an ordinary headlight in front, lighted and in good repair. When injured the engine was running backward at the rate of five miles

an hour, drawing one flat-car after it. The spur-track was on a common level with "72." The coal-car standing on the spur was nine feet, eight inches wide, painted a dark red, and was standing so close to "72," that as the engine backed past on "72" there was a space of but six and one-half inches between the side of the car and the tender of the engine. As the engine approached the spur connection and was about to pass the coal-car standing on the spur, Lawrence, who was riding on the deck of the engine with a lighted lantern in his hand and with his back toward the coal-car, swung out of the cab to the step leading down to the ground, to be ready to couple the flat-car to the coal-car when the former came in on the spur, and his body came in contact with the car and was carried and rolled between the car and the cab of the engine. It was the duty of Lawrence, as a member of the switching crew, at the time the coal-car was thrown on the spur, to see that the car, when it was placed on the spur, was a sufficient distance from the frog and "72," so that engines passing over "72" could pass and repass said car, with their switching crews riding or working about their engines, with safety to the crews. When the coal-car was thrown onto the spur, Lawrence, in answer to an inquiry by another member of the crew, said: "She will clear." The coal-car was placed on the spur about five minutes before Lawrence's death. There was no evidence that the coal-car was left by the switching crew on the spur, at the same place it was found standing at the time of the accident. There was room enough on the spur to enable the crew to set the coal-car far enough in to make it safe for crews engaged on, and with, passing engines. Others of the crew had the same opportunity to know that the coal-car was standing too close to "72." There was nothing to prevent Lawrence from seeing where the coal-car stood at the time it was left. If Lawrence had used the lantern he had in his hand as

he attempted to alight from the engine, backing to the south, he could not have seen the coal-car.

Appellant calls attention to the findings that it was the duty of the deceased, as switchman, to see that the coal-car was located on the spur at a safe distance from "72;" that there was nothing to prevent him from seeing where it was placed; that he announced to a fellow workman that it was placed so that it "would clear," and when in the act of alighting from the cab of the engine, while it was backing south past the coal-car standing on the spur, he swung out of the cab down to the step, with his back to the coal-car, without using his lantern to ascertain the proximity of the coal-car. These facts are, however, but a part extracted from the body of facts proved in the trial, and upon which the jury determined the general verdict. We have no means of ascertaining what other facts may have been proved, to explain or modify the special findings and become controlling in reaching the verdict. Hence the general rule, that this court on considering answers to interrogatories will indulge all reasonable presumptions against the special findings, and in favor of the general verdict; and, if the general verdict thus aided is not wholly inconsistent with such answers upon any rational hypothesis, it must prevail. *City of South Bend* v. *Turner* (1901), 156 Ind. 418, 54 L. R. A. 396, 83 Am. St. 200; *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583; *Baltimore, etc., R. Co.* v. *Rowan* (1885), 104 Ind. 88, 96.

Contributory negligence was provable, like any other facts within the issues, by a preponderance of the evidence; and the burden was upon the defendant. There is evidence in the record that there was plenty of room on the spur for the coal-car to stand clear of "72," and that when the coal-car was "kicked" onto the spur it ran in till it struck other cars standing thereon. There is an answer that there was no

evidence that the coal-car, when it caused the decedent's injury, was standing where it was when the decedent said it would "clear." There is also an answer that if the decedent had used his lantern when he went to leave the cab, he could not have seen the coal-car standing on the spur. If the car was moved from a place of safety to the place of danger, as we must here presume that it was, after Lawrence left it, and without his knowledge; and if the night was so dark that he could not see the car as he left the cab, if he had used his lantern, as the jury found the fact to be, then the jury was justified in acquitting him of negligence in these respects.

So under these facts, the evidence, and the rules of construction, we cannot sustain appellant in its contention that the general verdict, which, in effect, finds that the decedent was not guilty of contributory negligence, cannot be reconciled with the answers to the interrogatories. Therefore the motion for judgment on the answers to interrogatories was properly overruled.

In its motion for a new trial, also in the statement of errors relied on, appellant sets forth divers objections to the admission and exclusion of certain evidence. But the bill of exceptions is voluminous, the testimony of the witness chiefly involved covering more than fifty printed pages, and appellant has wholly failed, in his brief, to give the page and the line of the record where the action of the court complained of may be found, as required by rule twenty-two. We have therefore omitted consideration of such objections.

It is also claimed that the evidence did not sustain the answers relating to the decedent's contributory negligence. But there is some evidence in support of each one of them, and it was for the jury, not us, to say whether it amounted to satisfactory proof.

We find no error in the record. Judgment affirmed.

Gillett, J., did not participate.

## ON PETITION FOR REHEARING.

HADLEY, C. J.—Guided by the points and arguments of appellant's counsel in their brief on petition for a rehearing, we have reëxamined the questions involved in this case, and feel reassured that the conclusions we announced in the original opinion are correct.

Appellant's counsel, however, insist that certain questions arising under the motion for a new trial were not waived, and should be decided. The first relates to the court's action in overruling the appellant's motion to require the jury to make more definite and direct answers to certain interrogatories submitted to it, and which it had attempted to answer. The motion was addressed to a half dozen or more interrogatories, but only three of the number, to wit, forty, forty-one, and fifty-three, have been presented for review by a motion for a new trial.

The interrogatories relate to the placing of a car of coal upon a spur from the principal track. Lawrence, the decedent, was, at the time, the rear or field brakeman, and as such it was his duty to see that the car was placed on the siding at such a distance from the frog that it would clear the principal track. He had accompanied the car onto the spur, and, in answer to the inquiry of a fellow brakeman, said: "She will clear."

The three interrogatories in the record are as follows: "(53) Did Oscar Collins, a member of the same switching crew, immediately after the coal-car was placed and left standing on the spur-track [where it stood at the time Lawrence received his injuries] say to Lawrence, referring to the coal-car, 'Will she clear?' and did Lawrence answer, 'She will clear?' A. Collins made such inquiry and received an affirmative answer, but there is no evidence to show that the car was at the point where Lawrence received his injuries at the time he answered Collins." "(40) Did Lawrence, by the use of the words, 'She will clear,' mean that

said car was standing in far enough on the spur-track so that all engines, with their crews working and riding on and about them, could pass and repass said car with safety to said crews and each member thereof? A. No evidence what he meant. (41) If you answer the last question 'Yes,' did Lawrence exercise his own judgment in determining whether the car would clear? A. No evidence as to how he determined it.''

With respect to number forty, we do not see how it was possible for the jury to make a more positive answer. So far as appellant has pointed out, or we are able to discover, there was not a shadow of evidence before the jury that ''in the clear'' meant anything more than that the car was far enough in to enable a train on the main track to pass it without collision, nor was there any evidence that it meant that it was far enough in to enable engines, with their crews working or riding on or about them, to pass and repass with safety to the crews. There was evidence to the effect that the company had no clearance posts at the place, and no written or printed rules relating to the setting of cars on sidings, and no rule defining what should constitute or be understood by the term setting a car ''in the clear.'' The yard-master, in testifying for the railroad company, in answer to the question, ''What do you mean by 'in the clear'?'' said: ''I mean that the car should be in far enough to clear with safety all men working between the tracks. It should be in far enough for all the employes to ride back and forth with safety.'' The witness on cross-examination was asked if he drew his conclusions as to the duties of the decedent, in relation to the setting of the coal-car, from any written or printed rule of the company, and he answered: ''No, sir; only from practical work.'' The yard-master told the jury, not what was generally meant by the decedent and other employes of the company by the words ''in the clear,'' but what he meant as gathered from practical work, and not from any rules or definitions of the

company. The evidence further shows that Lawrence had been working with that engine and switching crew, as rear brakeman, but three days, and there was not a particle of evidence before the jury to show that he had ever been instructed or informed as to how far a car should be placed from the passing track to be deemed in the clear; or to show whether he understood that a car would be "in the clear" when only far enough in to avoid collision with a passing train, or whether it should be far enough in to afford room and safety for employes between the car and a passing train. As to what he meant was uncertain. In this state of the evidence it is plain that the jury could not have answered interrogatory forty any more definitely than it did. Any different answer would necessarily have been founded on guesses, and conjectures, and, as was said in a recent case: "Verdicts must stand upon evidence, and not upon surmise or conjecture." *Cleveland, etc., R. Co.* v. *Miller* (1898), 149 Ind. 490.

Interrogatory forty-one was to be answered only in the event the jury answered number forty in the affirmative, which it did not do. But it may be said, with respect to the merits of the question, that every syllable that has been written concerning the absence of evidence relating to the fact inquired of in the preceding interrogatory may be applied with equal accuracy and force to forty-one.

Interrogatory fifty-three rests upon no sounder basis. In the first place, it artfully assumes, as an established fact, that the coal-car, when it caused Lawrence's injuries, was standing in the same spot it occupied when he announced it was "in the clear." Whether the car had been moved after Lawrence placed it at the point where the injury occurred was a material and controverted fact relating to contributory negligence, and the court had no right to assume the fact to exist, one way or the other. The interrogatory should not have been submitted to the jury

in the first instance, and it was not error to overrule the motion for a more specific answer. The only competent part of the interrogatory was fully and specifically answered. *Cleveland, etc., R. Co.* v. *Goddard* (1865), 25 Ind. 185, 191.

Appellant's counsel, in the examination of one of appellee's witnesses, asked him the following question, which the court excluded, on appellee's objection: "You 19. may state if it was one of the duties of the rear switchman, at the time Lawrence was injured, to determine when a car was set in on a spur-track whether the car was sufficiently in on the spur-track so that an engine might pass with safety to the crew and all persons working or riding on the train." This question called for a conclusion of law or ultimate fact that was within the province of the jury, under proper instructions from the court, and not proper for the witness to draw. The duty to set the car in a particular manner, to meet particular emergencies, depended altogether upon the character and limitations of the employment as the same may be defined and illustrated by the terms of the contract and established rules and customs of the particular employment. It would have been proper to inquire about what acts of service belonged to the position of field brakeman, and which the decedent would have been held to agree to perform by his acceptance of the position, or to introduce any pertinent rule of the company, or established custom with which he was acquainted; and, from these subsidiary or evidentiary facts, it was the province of the jury to determine the main or ultimate conclusion of duty. Men of equal qualification might differ as to whether it was the decedent's duty to set the car at a particular distance from "72," under all the other facts and circumstances that surrounded him at the time; and the determination of such questions is generally for the jury.

The question is well illustrated in the case of *Blanchard-*

*Hamilton Furniture Co.* v. *Colvin* (1904), 32 Ind. App. 398. For the same reasoning applied to a complaint see *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247; *Pittsburgh, etc., R. Co.* v. *Peck* (1905), 165 Ind. 537. There are a number of other like questions relating to the duty of the decedent that are ruled by the same principle.

The further question was asked and refused. "You may state whether it was the custom, and had been for a considerable time previous to this injury, for the defendant company, in its Hammond yards, to use railroad engines for switching purposes." The question was wholly immaterial and properly refused.

A witness was asked whether there were, at the time of the accident, any written or printed rules of the company, governing the duties of field switchmen in the Hammond yards, concerning the placing of cars on switches leading off from the main track. The court refused the question, holding that the rules themselves should be first exhibited, identified, and introduced, and that their interpretation was not a matter for the witness. This was correct.

During this witness's cross-examination the further question was asked and refused: "If Lawrence had been facing the west, with his left hand holding the grab-iron, with his lantern in his right hand, could he, by the light of the lantern, have seen the coal-car?" An answer to the question must have depended upon the witness's knowledge of the power of the lantern, the strength of Lawrence's vision, the density of the darkness, etc., and, in the absence of such knowledge, the witness's answer must necessarily have been founded on surmise and conjecture, and was correctly refused. Besides, no harm could have resulted to appellant, for the witness proceeded to state the lantern's probable radius of light, and that there were no intervening objects between the engine and coal-car.

The court also denied the introduction of the following

rules of the company: "Rule 203. All persons are notified that in accepting or retaining employment with the company, they thereby assume all risks incident to such employment, including the risks arising from the risks of co-employes." Rule 207 was to the effect that the company desired its employes not to incur risks from which they could protect themselves, and enjoined upon them to take, in all cases, the time necessary to do their duty with safety to themselves, and not subject themselves to unnecessary risks. With respect to the first, the rule is wholly immaterial, since the action is founded on the negligence of the defendant in disobeying a city ordinance, against which the company had no power to relieve itself by contract, nor was it a hazard assumed by the decedent in his employment. The second is but an exhortation to care, and we do not see how it could aid the jury in determining the case upon its merits.

Finally it is insisted that the verdict is not sustained by sufficient evidence. There is no dispute but that the defendant was operating in its switchyard, within the city of Hammond, a locomotive, in the night-time, without a headlight on the rear end of the tender, in defiance of an ordinance requiring such light. This sufficiently established the negligence of the defendant.

On a very dark night, while the locomotive was running backward without a headlight on the then forward end of the tender, the decedent, while climbing out of the cab of the engine to the ground, in the discharge of duty, was caught and crushed between the engine cab and a coal-car standing on a spur but six and one-half inches from the passing locomotive. It is strongly probable that if the headlight had been on the forward end of the tender, where the ordinance provided it should be, the decedent would have seen the dangerous proximity of the car in time to avoid it. But it is earnestly urged by appellant's counsel that the evidence shows, without controversy, that the decedent, by

his own carelessness and inattention to business, contributed to his own injury.

There is no conflict in the evidence as to the following facts: The deceased was a mature man, possessed of all his faculties, and of ordinary judgment. For three days he had been working as field switchman, with the crew and locomotive with which he was engaged at the time of his injury. The company had no written or printed rules defining the duties of field switchman in setting cars from a main track onto a spur, or the distance such cars should be set in on the spur, or at what distance from the passing track a car should be deemed "in the clear." There was a custom prevailing in the yard, at the time, by which employes determined when a car was in the clear, by placing one foot on the inner side of the nearest rail of the passing track and extending the arm and hand toward the standing car, and if the car was not thereby touched by the finger tips it was held to be "in the clear;" but there was no evidence that the decedent had knowledge of such custom, either actual or constructive. When the coal-car was kicked in on the spur, Lawrence rode it in, and when it stopped he answered the inquiry of a fellow-switchman that "She will clear." The two switchmen then returned to the train, which proceeded northward, passing by the standing car that had just been placed, the locomotive was then headed to the north and had a brilliantly burning headlight in front. The engineer was at his station on the right side of the locomotive, and, when passing the car, was looking at an object on the right of the road, and did not see the car standing on the left. The fireman was also at his post on the left side of the engine, and from the headlight on the head of the locomotive did see, as they passed, the car standing on the spur.

In about five minutes the train returned southward to do some work on the spur-track referred to. The locomo-

tive was again backing, drawing some cars after it, and having no headlight on the then forward end of the tender, but having a signal lantern. When the train began its return southward Lawrence got into the cab of the engine. When they had arrived in the vicinity of the spur intersection, Lawrence, with a signal lantern in his right hand, and facing outward, seized the grab-iron of the cab with his left hand, stepped out and down onto the step of the cab, and was there caught and crushed between the cab and the coal-car which at that moment was standing but six and one-half inches from the cab of the engine. There were no lights or clearance posts near the place of injury, and plenty of room on the spur to set the car in a place of safety.

It should be borne in mind that the burden of proving contributory negligence rested upon the defendant. To establish such fact appellant has but three facts to rely upon. (1) It was Lawrence's duty to set the car far enough in on the spur to be in a position of safety to passing trains on "72"; (2) he did so place it, and announced that it would clear; (3) within five minutes after placing it he was injured by the car, by reason of its being in dangerous proximity to "72." These facts do not necessarily make out a case of contributory negligence. If the car had been safely set on the spur by the decedent, and had been moved by some force from a place of safety to a place of danger, without the knowledge or fault of the decedent, he was blameless. It must be presumed that he was blameless. The jury was justified in finding the general presumption strengthened by the facts that after the car had been set the train of cars, locomotive, and crew, passed by it without any collision or interference, and without its being observed, in the brilliant headlight of the locomotive, by any one on the train, except by the fireman, who testified he saw the car as he passed, but he was not asked by either party where it was, or how near it was to "72." The evidence shows that the spur was on

about the same level of "72." There was no evidence whatever as to whether the wind was blowing, or whether other cars were being shifted on the spur, or that the coal-car, when it caused the injury, was standing at the same place where it was left by the decedent. The defendant failed to ask the fireman how far away from the cab of the engine the car was standing as they passed it going north. The onus being upon the defendant to establish the decedent's negligence in setting the car, we are unable to say that the facts and circumstances described, were not sufficient to justify the jury in its conclusion that contributory negligence was not made out.

Petition overruled.