PROVOSTY, J.
The wires of the two defendant companies are on the same side of the street. The telephone company’s posts are taller than those of the electric light company, and its wires are strung 10 feet higher. For connecting with a house on the other side of the street two of the telephone wires were run slanting downward to a lower post on the same side of the street a distance of about 80 feet, then across the street to the house, then down the side of the house, and finally under the house, two feet from the ground. On their way downward they passed through the fleet of wires of the electric light company. This brought one of them so close to one of the heavily charged wires that the two would touch in oscillating; and the result was that the insulation of the heavily charged wire was either worn off or burnt off, and that the otherwise harmless wire going to the house became itself dangerously charged. This situation had lasted more than nine months, and the telephone had been removed from the house for more than, three months, when the accident oecurre which has given rise to this suit.
The two little sons of the plaintiffs these suits while at play near the house c in contact with the wire. Both were k~ ed senseless, and remained unconscious* time. Young Simmons soon revived/1 only other injury was a bum in th;' which necessitated his carrying the , in a sling for two months, and w«S left no trace except a large sear ; palm and a slight contraction oí between the thumb and the forefi as will affect the use of the haJs little. Young Smullins remained for four hours. The little finge;,' V£ his right hand was burnt off entirely; fi '¿/next finger *1036 was so burnt as to have to be amputated just below the first joint; it, or what is left of it, and the middle finger are now bent rigidly inward, useless,and deformed, crooking sideways; the end of one a stub, and the end of the other shrunk, and dwarfed, and peaked. In addition to this, his scalp was burned a space some five or six inches in diameter, and through the skin, and through the outer layer of bone, which afterwards sloughed off. Two months after the accident an operation became necessary, and a circle of four or five inches of the dead bone was cut off. At the time of the trial, which was six months after the accident, the physicians thought the wound would heal in about seven or eight weeks; but that grafting might become necessary, and that the place would remain permanently bald.
The defendants are sought to be held responsible in solido. The telephone company admits its negligence, and its liability for whatever amount of damages the nature of the case may warrant. It complains, however, of the award of the jury as excessive. t\That award is $500 in the Simmons Case, and $8,150 in the Smullins Case. If the verEjct had been somewhat less the court would, Irhaps, have liked it better; but it is not ^nanifestly excessive as to require reduc-
negligence charged against the electric fompany is that it tolerated this faulty ¡mgerous construction, and thereafter vfailJF^P keep its own wires sufficiently insulat to prevent the transmission of the curreWv-/»1
On Wfl that it Vi his case' tain, and' failed in for all thi side of the company it is argued not suffice for a plaintiff to make Vbable, that he must make it cerkt the plaintiffs in this case have ^ing their case certain, because, ppears, the insulation on the electric ligli , .'"ire may have been burnt off so recently p ' the company had not had time to discover the defect; and that'this view of the case is rendered all the more probable from the fact that the company’s system of construction was of the best and its mode of insulation of the most approved kind; and that the preceding day had been a wet day, when the burning of the insulation might have taken place.
It is further argued that conceding negligence on the part of the electric light company, such negligence was not the proximate cause of the injury; but that the proximate cause was the subsequent intervening and independent act of the telephone company, first, in leaving the wires in position after the removal of the phone, when they had ceased to be of any utility; and, secondly, in not properly insulating them. It is urged that the city ordinances required the telephone wires to be insulated, and that the electric light company had the right to assume that the telephone company would do its duty.
In answer to this argument we will say that, as a matter of fact, it is not true that the situation would have been without danger if the telephone wires had been properly insulated and the phone not removed; the evidence shows the contrary. The construction was originally and in itself so manifestly dangerous that the president of the electric light company says he would have protested against it if he had known of it. Such being the case, it can make no difference whether the insulation had worn off or burnt off. Indeed, if defendant’s electrician is to be believed that in wet weather the insulation becomes soft and lets the current through and burns off even on slight contact with another wire, the construction was all the more dangerous, for in that ease insulation would have been no protection. But, as a matter of fact, the insulation, whether by rubbing or burning, had been off for some time when the accident happened; the wires were worn bright where they touched, which shows that they must *1038 have been rubbing against each other for some time; long enough, surely, for the company to have had ample time in which to have discovered the defect, by proper inspection, and corrected it.
But we prefer to rest the case on the incontestible ground of the failure of the electric light company to have known of and remedied, this defective construction which had been a standing menace for more than nine months. The law on the subject is well stated in the following excerpt from 15 Cye. 474, founded in part on the decision of this court in the case of Hebert v. Lake Charles Ice Co., 111 La. 522, 35 South. 731, 64 L. R. A. 101, 100 Am. St. Rep. 505, to wit:
“Due care requires of those using wires or conductors of electricity so to place and maintain them with reference to similar conducting agencies that dangerous contact is not probable; and, where wires maintained concurrently by different parties are so erected or strung that one is likely to fall upon or come in contact with the other, thereby producing possible destructive consequences, either or both of them must make efforts to abate such dangerous condition, and if an injury occurs through a neglect of such duty, both are liable.”
The legal situation of electric light and power companies sending this potent fluid along their wires may be illustrated by comparing it to that of a showman conveying a caged tiger through the streets of a crowded city. The showman must not only make sure of the cage, and not himself open the door, but be vigilant in seeing that nobody .else opens the door. He could hardly expect that he would be heard to plead that some negligent person had opened the door. Of course, the situation is incomparably more complicated in the case of an electric light or power company with its system of wires pervading an entire city, and the appreciation of the facts in particular cases may be proportionally more difficult; but the principle is the same. Indeed, the prisoner of the company is more sleepless and subtle and in its stroke more quick and sure, whence the need of even greater viligance in keeping it safe within its prison wire.
Under this view of the matter the negligence of the electric light company continued down to the moment of the accident, and hence was its proximate cause.
We have not looked into the complaints against the charge of the judge. They would be no ground for remanding the case even if well founded. Where all the evidence is in the record this court must proceed to pass bn the case finally. Hennen, p. 92, No. 5.
Judgment affirmed.
BREAUX, O. J.
I concur in the opinion and decree, and dissent only regarding the amount. I think it is excessive.