## VALPARAISO LIGHTING COMPANY *v.* TYLER, ADMINISTRATRIX.

[No. 21,965. Filed December 11, 1911. Rehearing denied March 29, 1912.]

1. DEATH. — *Pleading.—Allegations of Complaint.—Act Causing Death.*—The allegations of a complaint that defendant negligently pushed the top of a pole against a wire charged with electricity in such manner as to cause the electric current to escape there-

from and be transmitted to a guy-wire which was attached to said pole and held by plaintiff's decedent, and through the body of plaintiff's decedent thereby causing his instantaneous death, were sufficient to repel a demurrer as against the objection that the death is averred by way of recital.   p. 282.

2.   PLEADING.—*Complaint.—Demurrer.—Admissions.*—Where a complaint alleges that plaintiff's decedent, who was killed by an electric current negligently transmitted to a guy-wire which decedent was holding while standing in the street, was free from contributory negligence and facts showing that he was lawfully in the street, a demurrer for insufficient facts admits his freedom from contributory negligence and that he was lawfully in the street. p. 282.

3.   ELECTRICITY.—*Injury from Electric Current.—Proximate Cause.* —Where plaintiff's decedent was engaged in the employ of a contractor to haul away poles for defendant, and, at the request of defendant's employes, took hold of a guy-wire to assist them in removing a pole and while holding said wire it came in contact with defendant's defectively insulated electric wire, whereby an electric current was transmitted to said guy-wire causing his death, the proximate cause of the injury was the escape of the current from the electric wire.   p. 283.

4.   ELECTRICITY.—*Injury from Electric Current.—Duty of Persons Transmitting Electricity.*—It is the legal duty of those engaged in transmitting electric currents along highways to exercise, for the protection of all persons lawfully using the highways, a high degree of care, commensurate with the danger incident to the proximity of the wires thereto.   p. 283.

5.   TRIAL.—*Instructions.—Duty to Request Proper Instruction.*— Where a party believes that an instruction is deficient, it is his duty to request one which will supply the deficiency.   p. 284.

6.   APPEAL.—*Harmless Error.—Instructions.*—In an action where plaintiff's decedent was engaged in the employ of a contractor to haul away poles for defendant, and while he was in the street for that purpose he was requested by defendant's employes to assist them in removing a pole by holding a guy-wire, which he did, and in the act of removing the pole the guy-wire came in contact with defendant's defectively insulated electric wire whereby an electric current was transmitted to said guy-wire causing his death, an instruction that it was the duty of defendant to keep its electric wires from coming in contact with persons rightfully using the streets, though subject to criticism, was not harmful to defendant.   p. 284.

7.   ELECTRICITY.—*Injury from Electric Current.—Contributory Negligence.—Voluntary Act.*—Where the evidence showed that plaintiff's decedent was in the employ of a contractor to haul away

poles for defendant, and, while so engaged, at the request of defendant's employes, he assisted them in removing a pole by holding a guy-wire attached thereto and which came in contact with defendant's defectively insulated electric wire causing his death, decedent was not, under such circumstances, an intermeddler nor a volunteer, nor was he a fellow-servant so as to preclude a recovery for such injuries. p. 285.

8. APPEAL.—*Admission of Evidence.—Briefs.*—Where an alleged error in the admission of evidence is not properly presented in appellant's brief, it will not be considered. p. 286.

9. TRIAL.—*General Verdict.—Special Findings.*—Special findings will not control a general verdict unless an antagonism is apparent on the face of the record that cannot be removed by any evidence legitimately admissible under the issues. p. 287.

10. DEATH.—*Damages.—Requiring Jury to Itemize.*—In an action for wrongful death the jury should not be required to itemize and assess a separate amount for each element of damages in the case. p. 287.

11. DEATH.—*Damages.—Elements.*—The elements of recovery by a mother for the death of her son, are not necessarily limited to the support and maintenance lost by his death, but may include compensation for personal services which might have been rendered the mother by decedent had he lived. p. 288.

From Porter Circuit Court; *Cornelius R. Collins*, Special Judge.

Action by Mary V. Tyler as administratrix of the estate of Harry B. Tyler, deceased, against the Valparaiso Lighting Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*Bomberger, Sawyer & Curtis* and *Sidney Stein*, for appellant.

*H. H. Loring*, for appellee.

MORRIS, C. J.—Appellee sued appellant for damages for personal injuries to her decedent, resulting in his death. The complaint was in five paragraphs. Appellant demurred to each paragraph thereof, which demurrer was overruled. The trial resulted in a verdict and judgment for plaintiff for $3,000.

It is claimed that the court erred in overruling the de-

murrer. The complaint is verbose and unnecessarily long. The first paragraph alone covers ten typewritten pages; but, disregarding the great mass of redundant matter, this paragraph does allege that on and prior to the day of the accident—April 4, 1907—defendant was operating an electric light plant in Valparaiso, which plant, among other things, consisted of wires, strung on poles twenty-five feet high, through which wires it constantly transmitted deadly currents of electricity; that one of the poles stood at a street crossing; that in the street and near the pole a new pole had been set, and a wire changed from the old pole to the new pole; that the old pole had attached thereto, at the top thereof, a guy-wire thirty-five feet long, the other end of which formerly had been attached to an anchor, but was then lying loose on the ground in the street. It is further alleged that the electric light wire on said pole formerly had been insulated, but at that time the insulation was rotten, and had fallen off the portion of the wire in the vicinity of the pole, and by reason thereof there was nothing to resist the escape of the electric current from the wire at that point, and that condition had existed for six months. It is also alleged that decedent's next of kin were his mother and brother, who were damaged in the sum of $10,000.

The old pole was set in the ground five feet deep. On the day of the accident, defendant, by its servants, was engaged in removing the old pole, by digging around it, and lifting it out of the ground. While so engaged, defendant negligently permitted the deadly current to continue passing through the light wire on the new pole, which was close to the top of the old one. Plaintiff's decedent, at the time, was an employe of one Youngs, who had been hired by defendant to haul away the old pole when taken out of the ground. Decedent arrived at the place while the workmen were digging, and was in the street waiting to haul the pole away for his employer as soon as it was taken out of the

ground. While so waiting, he took hold of the end of the guy-wire lying in the street, and, while holding it, defendant's servants, while working with the pole, negligently caused the top thereof to come in contact with the defectively insulated, charged wire, in such manner as to let the current escape therefrom and be transmitted through the guy-wire to the body of decedent, thereby causing his instantaneous death. It is alleged that decedent was free from contributory negligence, and was ignorant of the dangers averred, and that defendant had full knowledge of all the facts averred; that, at the time of his death, decedent was a minor, unmarried, and lived with his mother and helped to support her.

Counsel for appellant assert that the complaint is insufficient, because the death of decedent is averred by way of recital only. The language of the complaint is that defendant "negligently pushed the top of said * * * pole against one of said * * * wires * * * in such manner as to cause said * * * deadly current * * * to escape therefrom and be transmitted to said guy-wire and through the body of the said * * * Tyler, thereby causing the instantaneous death of * * * the said * * * Tyler."

Without commending the pleading, we think it was sufficient, as against the above objection to repel a demurrer. *Agar* v. *State* (1911), 176 Ind. 234, 94 N. E. 819, and cases cited.

It is also contended that the complaint is insufficient because it does not aver that the agents of defendant knew decedent had hold of the guy-wire before the injury, and, further, because the company was not bound to maintain its wires so that a person, not a traveler on the streets, who meddled therewith, would not be injured.

The demurrer admits decedent's freedom from contributory negligence, as alleged in the complaint; it also admits

that decedent was lawfully in the street when injured.

3. The proximate cause of the injury was the escape of the current from the light wire.

In *Indianapolis Light, etc., Co.* v. *Dolby* (1911), 47 Ind. App. 406, 92 N. E. 739, a current of electricity at a voltage of 2,250, was permitted to escape from the light com-

4. pany's wires to the wires of a telephone company in the vicinity, and the current was thereby transmitted to a police patrol box. The injured party was a policeman, who, on attempting to open the charged patrol box, received an electric shock, causing his death. The Appellate Court, in its opinion, in discussing the duty of those conveying electricity, at a high voltage, over wires in highways, to prevent the escape of the current from the wires, said: "When appellee shows that her decedent was killed by an electric current, so conveyed from the dynamos of the light and heat company to the patrol box, she has made a *prima facie* case of negligence. This is the most conservative statement of the law that can be supported by authorities, many of which go very much further. 'The courts agree that outside of any contractual relation the very nature of the business of transmitting such currents along highways imposes upon those engaged in it the legal duty to exercise, for the protection of all persons lawfully using the highways, the high degree of care commensurate with the danger incident to the proximity thereto of the wires charged with their invisible but deadly power.' *Walter* v. *Baltimore Electric Co.* (1909), 109 Md. 513, 71 Atl. 953, 22 L. R. A. (N. S.) 1181. See, also, *Boyd* v. *Portland Electric Co.* (1901), 40 Or. 126, 66 Pac. 576, 57 L. R. A. 619; *Herbert* v. *Lake Charles Ice, etc., Co.* (1903), 111 La. 522, 35 South. 731, 64 L. R. A. 101, 100 Am. St. 505; *Simmons* v. *Shreveport Gas, etc., Co.* (1906), 116 La. 1033, 41 South. 248. The owner of a ferocious tiger is bound to confine it, or if it escapes and kills he is responsible. The high electric current is more deadly than any tiger. It kills by a touch, and its presence

is only discovered when the mischief has been done; so that those who generate such currents ought, on principle, to be made insurers against damage thereby done. The authorities do not go this far, however, and for the purpose of this decision it is enough to hold that the facts heretofore summarized make a *prima facie* case.'' In our opinion the first paragraph of complaint here stated a cause of action.

The instructions given by the court to the jury are set out in appellant's brief. Appellant claims the first instruction is erroneous, because it assumes that the jury knew what the issues were, when the court had not advised them thereof. This position is untenable. If the instruction given was not full enough properly to advise the jury of the issues, it was appellant's duty to request one which supplied the deficiency.

The fourteenth instruction given was as follows: "It was the duty of the defendant company to so keep its electric wires overhead in Valparaiso street through which it transmitted a current of electricity, from coming in contact with persons rightfully using the streets of said city."

It is claimed this instruction was not applicable, because there is no claim that the overhead wire came in contact with decedent, and, further, because decedent was not using the streets of the city in the sense that gave him the protection due to a traveler on a highway.

The complaint alleges, and the evidence proves, that the current which caused decedent's death escaped from the light wire, and was transmitted through the loose guy-wire, one end of which defendant had left lying in the street. The other end of the guy-wire was fastened to the top of the old pole, and near the defectively insulated wire carrying the dangerous current.

Defendant was bound to anticipate that if the two wires came in contact at the top of the pole, injury might result to any one coming in contact with the loose end of the guy-

wire lying in the street, and that such injury might result either to a traveler or to one lawfully on the street, engaged as a laborer, or otherwise, and consequently defendant owed a duty, not only to travelers, but also to others rightfully in the highway, to prevent injury to them resulting from the negligent escape of the electric current from its light wire to the guy-wire. *Beaming* v. *South Bend Electric Co.* (1910), 45 Ind. App. 261, 90 N. E. 786, and cases cited.

In view of appellant's duty in the premises, under the evidence, we do not think that appellant could have been harmed by the instruction, though it is subject to criticism.

The evidence shows that employes of appellant, working under a foreman named VanNess, who had charge of the work of removing the old pole from the street, were 7. engaged in that work immediately preceding the accident. Decedent, who had come to haul away the pole, left his employer's team some distance away, and VanNess told him to come up and help get the pole out of the ground. The workmen had dug away the earth surrounding the pole, and were trying to pry it out. Tyler first tried prying, but the foreman told him he could do more by pulling on the guy-wire. Tyler took hold of the guy-wire. VanNess instructed him in what direction to pull it, and he obeyed the instruction. The others thereupon began to pry the pole up with iron bars, when one of the iron braces of the cross-arm attached to the old pole struck the electric light wire, and a spark flew out at the point of contact; at that instant Tyler fell, and died immediately. Appellant insists that Tyler was holding the guy-wire at the request of VanNess, appellant's working foreman, and this request was not binding on appellant; that decedent was a mere volunteer, in assisting appellant's employes, and, therefore, appellant is not liable for the resulting injury.

It is not necessary here to determine the scope of the authority of the foreman to bind the master in making the request. The evidence shows, without contradiction, that de-

cedent's employer, Youngs, was hired to haul away the old poles at a stipulated price per pole, and decedent was employed by Youngs at a certain rate of wages per week. Tyler's employer was interested in getting the pole ready to haul away as soon as possible, and, in accellerating the work, Tyler's employer and appellant were mutually interested. Under such circumstances, Tyler, in assisting in the work of removing the pole, was not an intermeddler nor a volunteer, nor was he a fellow servant of VanNess, so as to preclude a recovery for injuries proximately caused by defendant's servants. 4 Thompson, Negligence §§4985-4987; *Cleveland, etc., R. Co.* v. *Marsh* (1900), 63 Ohio St. 236, 58 N. E. 821, 52 L. R. A. 142; *Eason* v. *Sabine, etc., R. Co.* (1886), 65 Tex. 577, 57 Am. Rep. 606; *Church* v. *Chicago, etc., R. Co.* (1892), 50 Minn. 218, 52 N. W. 647, 16 L. R. A. 861; *Bonner* v. *Bryant* (1891), 79 Tex. 540, 15 S. W. 491, 23 Am. St. 361; *Welch* v. *Maine Cent. R. Co.* (1894), 86 Me. 552, 30 Atl. 116, 25 L. R. A. 658.

Appellant asserts error in the admission in evidence of certain mortality tables, but it has waived its right to a

8.  consideration of this point, by failing properly to present it in its brief.

It is contended that the answers to the interrogatories submitted to the jury show that decedent was guilty of contributory negligence, and therefore the court erred in overruling appellant's motion for judgment on said answers.

This contention is based on the following interrogatories and answers thereto: "(19) Was plaintiff's decedent holding a guy-wire attached to said pole when he received the fatal shock? A. Yes. (20) Did said decedent receive a shock from said wire while holding the same some minutes before he received the fatal shock? A. Yes. (21) If you answer the last question 'yes' did he know that he had received a shock at said time? A. Yes. (22) After he had received said first shock did he know there was an electric

current in the wires running in the vicinity of said pole?
A. No.   (23) After he had received said first shock did he
again take hold of said guy-wire and attempt to assist in
raising said pole?   A. Yes.   (25) Were the electric wires
carrying a current of electricity at the time and place of the
fatal injury of said decedent known as insulated wires?
A. Yes.   (26) Was the insulation badly worn and torn off
of said wires at said place?   A. Yes.   (27) If you answer
the last question 'yes,' was said fact apparent to the ordi-
nary observation of a person in that vicinity?   A. Yes."

It is settled beyond all controversy that the special find-
ings of the jury will not control its general verdict unless the
antagonism is apparent on the face of the record,
beyond the possibility of being removed by any evi-
dence legitimately admissible under the issues.   *Chi-
cago, etc., R. Co.* v. *Lawrence* (1907), 169 Ind. 319, 79 N. E.
363, 82 N. E. 768.

We cannot say that the special findings are such as to
show contributory negligence under any evidence that might
have been legitimately admitted.

It is further contended that the verdict for $3,000 is ex-
cessive in the sum of $600.   This proposition is based on
the finding of the jury, by its answer to an interrogatory, as
follows:   "(28) How much, if anything, did decedent's
mother have a right to expect that he would contribute to her
support and maintenance during the balance of her life-
time?   A. $160 for fifteen years."

This interrogatory should not have been submitted to the
jury.   Damages were assessable for all the pecuniary loss,
if any, sustained by the mother and brother of dece-
dent (not, however, to exceed $10,000) which legiti-
mately resulted from his death.   The jury should not
be required to itemize and assess a separate amount for each
element entering into and making up the gross sum allowed.
*Ohio, etc., R. Co.* v. *Judy* (1889), 120 Ind. 397, 22 N. E.

252; *Muncie Pulp Co.* v. *Davis* (1904), 162 Ind. 558, 70 N. E. 875; *Cleveland, etc., R. Co.* v. *Miller* (1905), 165 Ind. 381, 74 N. E. 509; *Skillen* v. *Jones* (1873), 44 Ind. 136.

Even if the interrogatory were a proper one, and if, under the issues, Mrs. Tyler were the sole beneficiary, the answer would not control the general verdict, for where

11. mother and son live together as members of a family, the mother's damages are not necessarily limited to the support and maintenance lost by the death of the son, but may include, also, compensation for personal services, which the jury would be warranted, under the evidence, in finding might have been rendered the mother by decedent had he lived. *Smith* v. *Michigan Cent. R. Co.* (1905), 35 Ind. App. 188, 73 N. E. 928.

The evidence supports the verdict, and there is no error in the record. Judgment affirmed.

NOTE.—Reported in 96 N. E. 768. See, also, under (1) 13 Cyc. 340; (2) 33 Cyc. 333; (3) 15 Cyc. 471; 100 Am. St. 515; (4) 15 Cyc. 472; (5) 38 Cyc. 1693; (6) 38 Cyc. 1809; (7) 15 Cyc. 476; 26 Cyc. 1287; (8) 2 Cyc. 1015; (9) 38 Cyc. 1926; (10) 13 Cyc. 249; (11) 13 Cyc. 369.