## ILLINOIS SURETY COMPANY v. FRANKFORT HEATING COMPANY.

[No. 22,091.   Filed January 24, 1912.   Rehearing denied June 26, 1912.]

1. PLEADING.—*Complaint.*—*Certainty.*—Although a complaint, containing sufficient facts, is lacking in definiteness and certainty, it will repel a demurrer. p. 210.

2. APPEAL.—*Waiver of Error.*—*Failure to Discuss in Brief.*—By failing to discuss an alleged error in its brief, appellant waived its right to a consideration thereof. p. 210.

3. PLEADING.—*Complaint on Contractor's Bond.*—*Allegations.*—*Construction.*—In an action against the surety on a contractor's bond for the erection of a heating system, where the contract provided that payment was to be made in five installments, the fourth installment being payable when the work was "erected complete, ready to start", and the last being payable as soon as the same was placed in operation by the contractor, and found to be in accordance with the plans and specifications, and operated successfully, and the complaint averred that after the system was erected, and at all times since, the contractor had failed to operate it successfully, the further allegation that plaintiff had made all the payments of money to the contractor as stipulated in the contract, fairly construed, is an averment that all payments were made except the last one, which was not due until after the system had been successfully operated, and which, under the provisions of the bond, was not to be paid until after notice to the surety. p. 210.

4. TRIAL.—*Verdict.*—*Answer to Interrogatories.*—Where a complaint against the surety on the bond of a contractor for the erection of a heating system, alleged that after the erection of the work, and at all times since, the contractor had failed to operate it successfully, and that plaintiff had made all payments to the contractor as stipulated in the contract, and the contract provided that the last payment was to be made after the system had been successfully operated, answers by the jury to interrogatories, showing that plaintiff had paid for the system and had failed to notify the surety before making final payment, were not in conflict with a general verdict for plaintiff, since "final payment" shown by the interrogatories had reference to the last payment that became due under the allegations of the complaint, and not to the payment to become due after the system was successfully operated, which alone was required by the bond to be made only after notice to the surety. p. 212.

5. TRIAL.—*Verdict.—Answers to Interrogatories.*—Where a contractor's bond provided that notice should be given to the surety within twenty-four hours of any act, omission or default on the part of the principal, which may involve a claim or loss, the jury's answers to interrogatories, in an action against the surety for the contractor's failure to make the work operate successfully, showing that plaintiff knew of the defective condition of the device several weeks before notifying the surety that it would not operate successfully, were not in conflict with a verdict for plaintiff, since under the pleadings evidence might have been given to show that the defective condition of which plaintiff had knowledge was not such as would involve a claim or loss. p. 213.

6. TRIAL.—*Verdict.—Answers to Interrogatories.—Control of Verdict.*—The special findings of a jury will not control its general verdict, unless there is antagonism apparent on the face of the record, beyond the possibility of being removed by any evidence legitimately admissible under the issues. p. 215.

7. APPEAL.—*Review.—Harmless Error.—Instructions.*—In an action against the surety on a contractor's bond where the verdict for plaintiff was in a sum less than the penalty of the bond, the failure of the court in its instructions to inform the jury that it must limit the recovery to an amount not greater than the penalty of the bond, was harmless error. p. 215.

8. TRIAL.—*Instructions.—Conformity to Evidence.—Refusal.*—The refusal of requested instructions which do not conform to the evidence in the case is proper. p. 215.

9. APPEAL.—*Review.—Harmless Error.—Modification of Instructions.*—While the failure of the trial court to rewrite requested instructions, as modified, as required by §561 Burns 1908, Acts 1907 p. 652, is error, a cause will not be reversed therefor where it appears from the record that appellant was not harmed thereby. p. 215.

10. EVIDENCE.—*Competency.—Quality or Efficiency of Machinery.*—It is not competent to establish the quality or efficiency of the machine in controversy by proving that of a machine sold to some one else. p. 216.

11. APPEAL.—*Objection to Admission of Evidence.—Waiver.—Briefs.*—The consideration of the action of the trial court in the admission of evidence is waived, where appellant has not complied with Rule 22 of the Supreme Court, by pointing out in its brief the specific question or answer objected to. p. 217.

12. APPEAL.—*Review.— Verdict.— Evidence.— Sufficiency.*—Where there is some evidence to support each material allegation of the complaint, the verdict is sustained by sufficient evidence. p. 217.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Action by the Frankfort Heating Company against the Illinois Surety Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Earl F. Gruber* and *Harry C. Sheridan,* for appellant.
*Joseph P. Gray,* for appellee.

Morris, C. J.—Appellee sued appellant on a surety bond executed by it to insure the performance of a contract entered into by one Schott and appellee, whereby Schott agreed to install the Schott Hydro-Vacuum Heating System in the heating plant of appellee, at Frankfort.

The court overruled a demurrer to the complaint, and sustained a demurrer to the second paragraph of appellant's answer. The issue was formed by the first paragraph of answer, which was a general denial. The cause was tried by a jury, resulting in a verdict of $2,000 for plaintiff. From the judgment rendered on this verdict, appellant appeals.

The errors assigned here are the overruling of the demurrer to the complaint, sustaining the demurrer to the second paragraph of answer, overruling appellant's motion for judgment on the answers of the jury to interrogatories, and overruling the motion for a new trial.

While the complaint is lacking in definiteness and certainty, it contains sufficient facts to repel a demurrer.

1. If the court erred in sustaining the demurrer to the second paragraph of answer, appellant has waived its

2. right to a consideration thereof by failing to discuss the same in its brief.

The consideration for the work, as provided by the contract, was $4,500, to be paid in installments as the work progressed, as follows: $1,850 when pipes, etc., were on

3. the grounds; $1,400 when the pump was on the grounds; $400 when connecting chamber was on the grounds; $400 when the work was "erected complete, ready to start;" $450 "as soon as the same is placed in operation by the contractor, and it is found to be in accordance with

the plans and specifications, and operated successfully as hereinbefore guaranteed.''

The contract further provided as follows:

''Time of completion: The work herein shall be completed and ready for operation not later than September 1st, 1908, providing the contract is accepted without delay and the contractor is not delayed by causes beyond his reasonable control.''

The following provisions are set forth in the bond sued on:

''1. That said surety shall be notified in writing of any act, omission or default on the part of the said Principal, * * * which may involve a claim or loss for which the said Surety is or may be responsible hereunder, within twenty-four hours after the occurrence of such act, omission or default shall have come to the knowledge of the Owner. * * * Said notification must be given by a United States post office registered letter, mailed to said Surety at its principal office in Chicago, Illinois. * * * 4. That said owner, the superintendent of the works, must give the said surety five days' written notice before the last payment under the contract herein referred to, is made the principal, otherwise this obligation shall be void as to any liability of the surety hereunder.''

The complaint, among other things, alleges that Schott entered on the performance of the contract, and endeavored to install the system in connection with plaintiff's power plant, and erected the same and tried to operate it, but after its erection and at all times since has wholly failed to operate the system or to make it work. It is alleged further that ''plaintiff has made all the payments of money to said Schott as stipulated in said contract.''

A fair construction of the complaint results in the conclusion that it avers that all the payments provided for in the contract were made by appellee, except the last one, which was not due until after the system had been successfully operated, as guaranteed.

Among the interrogatories submitted to the jury, and the answers thereto, are the following: '' (13) Do you find that

the plaintiff paid the said W. H. Schott for the device 4. described in its complaint known as the Schott Hydro-Vacuum Heating System, prior to the filing of this suit? A. Yes. (14) Did the plaintiff notify the defendant five days prior to making of last payment for said device of making of such payment? A. No. (15) Did the plaintiff give the defendant any notice whatever at any time prior to making final payment for such device? A. No."

"(1) Do you find that the Schott Hydro-Vacuum Heating System, installed by W. H. Schott in plaintiff's heating plant in Frankfort, Indiana, failed in any particular to operate? A. Yes. (2) If you answer interrogatory number one in the affirmative, when did it so fail to operate? A. At all times after the test. (3) When did the plaintiff discover that the device known as the Schott Hydro-Vacuum Heating, installed by W. H. Schott, in plaintiff's heating plant, failed to operate? A. After the test, at all times. * * * (7) Did not the plaintiff know as early as the 2d day of December, 1908, of the defective condition of the device installed by said W. H. Schott and known as the Schott Hydro-Vacuum Heating System? A. Yes. * * * (11) When did the plaintiff notify the defendant by registered letter of the failure of the device described in its complaint to operate? A. February 11, 1909."

It is contended by appellant that the jury's answers to interrogatories thirteen, fourteen and fifteen established the facts that full and final payment had been made by appellee to Schott before bringing the suit, and that no notice was given to appellant prior to making final payment, and, as proviso four of the bond requires five days' notice, the facts above found are in irreconcilable conflict with the verdict.

We think counsel for appellant err in their conclusion. Considering the complaint, which alleges that the system was erected by the contractor, but that it was never made to work, and the above interrogatories and answers thereto, the inference that the last installment—$450—due only

when the plant had been successfully operated, was never paid, if not expressly warranted, is surely not excluded. Indeed, we think the "final payment" referred to in the interrogatories was understood by the jury as the payment made when the plant was erected ready to start, as that was the last payment that became due under the allegations of the complaint. No notice was required by the proviso, until before the paying of the instalment of $450, due after the successful operation of the system.

Counsel for appellant also maintain that the facts, elicited by the answers to interrogatories one, two, three, seven and eleven cannot be reconciled with the general verdict, because, as appellant contends, these answers show that appellee knew on or before December 2, 1908, of the failure of the device to do the work required, but gave no notice thereof to appellant until February 11, 1909, and by reason of such delay appellant is not liable because of proviso one in the bond.

Appellee contends that the requirement in proviso one, of notice within twenty-four hours of any act, omission or default on the part of the principal, which may involve a claim or loss, is unreasonable, and should not be enforced.

We do not think it necessary to determine that question here. The answer to interrogatory seven discloses the fact that appellee on December 2, 1908, knew of the defective condition of the device, but it does not necessarily follow that this defective condition constituted "any act, omission or default" of the principal, which might involve a claim or loss. The complaint is very long. A copy of the installation contract, filed with the complaint, shows that the device to be installed was a complicated and intricate piece of mechanism, and was designed to perform functions of a delicate and complex nature. It was expressly provided in the contract that the contractor should not be held responsible for delays caused by labor strikes, accidents, delays of carriers, or other causes beyond his control.

The contract guaranteed that by the device all the steam taken from the city light plant, for use in connection with the heating system, would be taken away without back pressure on the engines of the light plant, and would create a partial vacuum at the light plant, except at a particular time when the commercial and street lighting loads overlap, commonly termed "the peak"; this peak supposedly being from fifteen to sixty minutes duration. The contract further guaranteed an increase of fifty per cent in present pumping capacity, and provided that title to the device to be installed should not pass to appellee until the plant had been fully paid for according to the terms of the contract.

Contracts must receive a reasonable interpretation, and this cannot be determined here except by a consideration of all the parts of the contract, including the nature of the mechanism, and the functions it was designed to perform, and the conditions surrounding the installation.

Under the pleadings, evidence might have been given that wholly justified the contractor in the delay in installing the system. Evidence might also have been given showing that when plaintiff discovered the defective condition of the device on December 2, 1908, such defect might have been remedied by some adjustment of the parts, or by removing some part thereof containing a latent defect and supplying its place with a new part free of defects. It might have been shown by the evidence that both the contractor and the appellee in good faith believed that the defective condition of the device could readily be remedied, and that with the consent of appellee the contractor diligently endeavored to remedy the defective condition, but, by reason of labor strikes, accidents, delays of carriers, or "other causes beyond his control", the contractor was prevented from remedying the defect during the ensuing time up to February 11, 1909, on which day it was discovered for the first time that the defect could not be remedied. In such case there would have been no "act, omission or default" of the prin-

cipal, previous to February 11, 1909, that might involve ''a claim or loss'' for which the surety was responsible.

The special findings of the jury will not control its general verdict, unless the antagonism is apparent on the face of the record, beyond the possibility of being removed 6. by any evidence legitimately admissible under the issues. *Valparaiso Lighting Co.* v. *Tyler* (1912), 177 Ind. 278, 96 N. E. 768, and cases cited. Such antagonism does not here appear.

In its fourth instruction given, the court informed the jury of the rule governing the measure of damages. It did not inform the jury that it must confine itself to 7. an amount not greater than the penalty of the bond, which was $4,500. Appellant complains that this failure was error. Appellant was not harmed by this defect, as the verdict was for an amount less than the penalty of the bond.

The court refused to give instructions two, eight and nine, requested by appellant. In each of these instructions it was sought to have the jury informed that if it found 8. that plaintiff fully paid the contractor all the purchase price provided for in the contract, before bringing the suit, and if it further found that prior to the final payment no notice thereof was given to defendant by plaintiff, the finding should be for defendant. The lower court did not err in refusing the instructions. There was no evidence that the last instalment of $450, provided for in the contract, was ever paid. The only evidence given on the subject was to the effect that it never was paid.

Appellant tendered to the court its instructions four and seven, and requested the same to be given to the jury. Over the objections of appellant, the court slightly modified 9. each of the instructions tendered, and so modified, without rewriting them, gave them to the jury. Appellant claims that this action was erroneous under §1 of the act of 1903 as amended in 1907 (Acts 1907 p. 652, §561

Burns 1908). It is provided in that section, among other things, that "if the court shall modify any instruction requested, the instruction as modified shall be written out at full length and shall be given as one of the instructions given by the court of its own motion, and the instruction as requested shall be refused." The action of the court did not comply with the above provision and, consequently, was erroneous.

The instructions requested by appellant, and the court's action with reference thereto, and the instructions given by the court, were brought into the record by a special bill of exceptions. The record discloses the modifications of instructions four and seven, requested by appellant, that were made by the trial court. Without setting them out, it is sufficient to say that appellant was not harmed by the modifications.

Section 700 Burns 1908, §658 R. S. 1881, provides that no judgment shall be reversed by this court where it shall appear that the merits of the cause have been fairly determined by the court below. Here, it affirmatively appears that the modifications of the instructions in controversy could not have been harmful to appellant, and the judgment should not be reversed for such erroneous action of the lower court.

One Doncho, an expert witness called by appellant, testified about a device, perfected by the contractor Schott, and attached to the Hydro-Vacuum Heating System used by witness in the operation of a heating plant in his charge at Lafayette. The court refused to permit the witness to testify as to the purpose and working of the device in his charge at Lafayette, and appellant contends that this refusal was erroneous.

It was not competent to establish the quality or efficiency of the machine in controversy, by proving that of a machine sold to some one else. *Acme Cycle Co.* v. *Clarke* (1901), 157 Ind. 271, 280, 61 N. E. 569; *McCormick, etc., Mach. Co.* v.

*Gray* (1885), 100 Ind. 285; *Bauer* v. *City of Indianapolis* (1884), 99 Ind. 56.

Appellant complains generally of the improper admission of evidence on the question of damages, but in its brief it has not pointed out any specific question or answer

11. in relation thereto, and has thereby waived its right to a consideration here of the lower court's action in that respect. Rule 22 of this court.

Finally, it is claimed that the evidence is not sufficient to sustain the verdict. There was some evidence given

12. to support each material allegation of the complaint. There is no reversible error. Judgment affirmed.

Note.—Reported in 97 N. E. 158. See, also, under (1) 31 Cyc. 72; (2) 3 Cyc. 388; (3) 31 Cyc. 79; (4, 6) 38 Cyc. 1927; (7) 38 Cyc. 1818; (8) 38 Cyc. 1617; (9) 38 Cyc. 1722; (10) 17 Cyc. 274; (11) 2 Cyc. 1015; (12) 3 Cyc. 348. As to notice of default of the principal obligor under a contract of guaranty, see 105 Am. St. 516. As to fidelity insurance, see 100 Am. St. 774.