CITY OF DECATUR *v.* EADY, EXECUTRIX.

[No. 22,834. Filed March 30, 1917.]

1. TRIAL.—*Directory Instructions.*—*Omission of Essential Facts.* —Where a court by an instruction undertakes to enumerate all the material facts essential to a recovery, and by such instruction directs the jury to return a verdict if such facts are found to be true, the omission of a material fact renders the instruction erroneous, and the error is not cured by another instruction properly enumerating all the material facts necessary to a recovery. p. 209.

2. MASTER AND SERVANT.—*Injury to Servant.*—*Common-Law Action.*—*Proof.*—*Assumption of Risk.*—At common law a servant seeking to recover for injuries resulting from the negligence of the master was required to prove not only that the master had been guilty of negligence which proximately caused the injury, but also that the servant had neither actual nor constructive notice of the danger, and, if the servant knew of the dangerous condition or could have known of it by the exercise of reasonable care, he assumed the risk incident to such danger. p. 210.

3. MASTER AND SERVANT.—*Injuries to Servant.*—*Trial.*—*Directory Instructions.*—*Assumption of Risk.*—In an action for wrongful death caused by defendant coming in contact with a high-voltage wire, an instruction directing the jury to find for plaintiff if certain enumerated facts were found to be true, but not requiring a finding, as an essential fact on which to base the verdict, that decedent did not know of the dangerous condition of the wire and that he could not have known of it by the exercise of ordinary care, is erroneous under the common law. p. 210.

4. MASTER AND SERVANT.—*Injuries to Servant.*—*Assumption of Risk.*—*Employers' Liability Act.*—*Effect.*—Under the conditions set out in the Employers' Liability Act (§8020a *et seq.* Burns 1914, Acts 1911 p. 145,) the common-law rule as to the assumption of risk has been abrogated, and the employe may recover

City of Decatur *v.* Eady—186 Ind. 205.

for injuries even though he may have known of the danger causing the injury or could have learned of it by the exercise of due care. p. 210.

5. MASTER AND SERVANT.—*Injuries to Servant.—Recovery under Employer's Liability Act.—Instruction.*—In an action for wrongful death, an instruction directing a verdict for plaintiff under the Employers' Liability Act (§8020a *et seq.* Burns 1914, Acts 1911 p. 145) upon the hypothesis that the jury find certain facts from the evidence, must require the jury to find, as a prerequisite to recovery all the facts as stated in the complaint which bring the cause within the terms of the statute, and where such an instruction fails to so do, it is erroneous. p. 211.

6. MASTER AND SERVANT.—*Injuries to Servant.—Trial.—Assumption of Risk. — Instruction. — Harmless Error. —* In an action against the master to recover for the death of an employe, an instruction directing a verdict for plaintiff upon a finding of certain facts, but which erroneously failed to require a finding on the question of decedent's assumption of risk, was not prejudicial to defendant city where the undisputed evidence showed that it employed more than five persons in the operation of an electrical plant and that, at the time of his injury, decedent went into the place of danger in obedience to orders given by defendant's superintendent, since such a case comes within the provisions of the Employers' Liability Act (§8020a *et seq.* Burns 1914, Acts 1911 p. 145,) §2 of which eliminates the assumption of risk. p. 211.

7. NEGLIGENCE.—*Elements.*—Negligence consists in the failure to use due care, or ordinary care, which is measured by the care a person of reasonable prudence would ordinarily exercise under like conditions and circumstances, but the care used must be commensurate with the danger. p. 212.

8. MASTER AND SERVANT.—*Injuries to Servant.—Instruction.—Insulation of High-Voltage Wires.—Care Required.*—In an action for the wrongful death of an employe, instructions that it was defendant's duty to keep high-voltage wires perfectly insulated and that it must use the utmost care to so maintain them were erroneous, since only ordinary care was required of the employer. p. 212.

9. MASTER AND SERVANT.—*Injury to Servant.—Insulation of High-Voltage Wires.—Care Required.—Instruction.*—In an action to recover for the death of an employe, an instruction authorizing a recovery if decedent's injury was caused by his coming in contact with an imperfectly insulated wire without fault on his part was erroneous, since defendant would not be liable unless the defect was due to a want of reasonable care, or could have been discovered and remedied by such care, as

City of Decatur *v.* Eady—186 Ind. 205.

defendant was not an insurer of perfect insulation of its wires. p. 213.

10. NEGLIGENCE.—*Elements.*—*Duty to Use Due Care.*—The duty to use due care is absolute, certain and unchanging, and the acts, precautions and conduct which ordinary care requires to fulfill the duty are relative and variable according to the conditions and circumstances of a particular case, and must be determined as questions of fact. pp. 214, 215.

11. MASTER AND SERVANT.—*Master's Duty to Use Due Care.*— It is the duty of the master to use reasonable care for the safety of his servants whether the agencies employed in his business are comparatively safe or extremely dangerous, the acts of care and precaution which ordinary prudence requires being determined as a matter of fact from a consideration of the danger incident to the use of the agency employed, as well as from the circumstances and conditions surrounding the case in question. p. 214.

12. NEGLIGENCE.—*Action.*—*Prima Facie Case.*—*Recovery.*—A verdict of recovery in an action for negligence may be based on a *prima-facie* case in the absence of contrary evidence, but such a case may be rebutted by evidence of care on the part of the defendant, thus raising an issue of fact as to whether reasonable care was exercised under the particular circumstances. p. 216.

13. NEGLIGENCE.—*High-Voltage Wires.*—*Care Required.*—The law does not fix a standard of care for those maintaining high-voltage electric wires other than such care as a person of reasonable prudence would ordinarily use under like conditions and circumstances. (*Indianapolis Light, etc., Co.* v. *Dolby* [1910], 47 Ind. App. 406; *Valparaiso Lighting Co.* v. *Tyler* [1911], 177 Ind. 278; and *South Bend Home Telephone Co.* v. *Beaning* [1913], 181 Ind. 586, distinguished.) p. 216.

14. APPEAL.—*Reversal.*—*Erroneous Instructions.*—*Harmless Error.*—*Statute.*—Under §700 Burns 1914, §658 R. S. 1881, providing that judgment shall not be reversed for defects in form, variance or imperfections contained in the record, etc., if it appears that the cause has been fairly tried and determined, errors committed in giving instructions are not cause for reversal where it appears that such errors did not affect the result. p. 217.

15. APPEAL.—*Review.*—*Erroneous Instructions.*—*Presumptions.* —In considering the effect of erroneous instructions, the court on appeal assumes that the error influenced the result unless it appears from the interrogatories, the evidence or some other part of the record, that the verdict under proper instructions could not have been different. p. 217.

16.—NEGLIGENCE.—*Res Ipsa Loquitor.*—*Scope and Application of Doctrine.*—The maxim of *res ipsa loquitor* generally applies only where the accident causing the injury grew out of the operation of some instrumentality entirely under the control of the defendant, and where the accident was such as does not ordinarily occur except in the absence of due care and excluding all other probable causes. p. 218.

17.—MASTER AND SERVANT.—*Injuries to Servant.*—*Res Ipsa Loquitor.*—*Application of Doctrine.*—*Statute.*—The maxim *res ipsa loquitor* applies in an action against the master to recover for the death of a servant killed while in the performance of his duties under his employer's orders, since the Employers' Liability Act (§8020a *et seq.* Burns 1914, Acts 1911 p. 145), abrogating the fellow-servant rule and eliminating the defense of assumption of risk in cases coming within the provisions of the act, has removed the principal reasons why the maxim was previously held not to apply in cases in which the relation of master and servant existed. p. 218.

18. APPEAL.—*Harmless Error.*—*Erroneous Instruction.*—In an action against the master to recover for the death of a servant, where the undisputed evidence showed that deceased was electrocuted by coming in contact with a high-voltage wire where the insulation had worn off, a *prima facie* case of negligence was established, which, in the absence of evidence showing care in the insulation and inspection of the wire, was sufficient, as a matter of law, to convict defendant of negligence and an erroneous instruction on that subject was harmless, since the verdict could not have been for defendant under proper instructions. p. 219.

From Allen Circuit Court; *E. O'Rourke,* Judge.

Action by Rebecca Eady, executrix of the estate of Philip J. Eady, deceased, against the City of Decatur. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Louis C. DeVoss, David E. Smith* and *Colerick & Hogan,* for appellant.

*Clark J. Lutz,* for appellee.

LAIRY, C. J.—Appellee, as administratrix of her deceased husband, recovered judgment against appellant for damages occasioned by his death, which resulted, as alleged, from negligence on the part of the appellant,

which is a municipal corporation owning and operating an electric light plant for the purpose of lighting its streets and furnishing electricity to private consumers for light and power. At the time appellee's decedent met his death he was employed as a lineman by appellant, and was engaged in attaching a transformer by means of a hook to the second cross-arm on one of appellant's poles. While so engaged he came in contact with a high-voltage wire located on that cross-arm, and received therefrom a current of electricity, which produced death.

The only error assigned is the action of the trial court in overruling appellant's motion for a new trial. The specific causes relied on are: That the verdict was not sustained by the evidence; and that the court committed error by giving certain instructions.

1. A number of the instructions to which appellant objects are directory in their character. They direct a verdict in favor of the plaintiff, in case the jury should find from the evidence certain facts enumerated therein. It has been repeatedly held that, where a court by an instruction undertakes to enumerate all of the material facts essential to a recovery, and by such instruction directs the jury to return a verdict for the plaintiff if such facts are found to be true, the omission of a material fact essential to a recovery renders the instruction erroneous, and that such error is not cured by another instruction which properly enumerates all of the material facts necessary to recovery. *Chicago, etc., R. Co.* v. *Glover*, (1899), 154 Ind. 584, 57 N. E. 244, and cases cited; *American, etc., Tin Plate Co.* v. *Bucy* (1908), 43 Ind. App. 501, 87 N. E. 1051.

At common law a servant who sought to recover damages for personal injuries resulting to him through the negligence of his master was required to prove not only

that the master had been guilty of negligence which proximately caused the injury, but also that the servant had neither actual nor constructive 2. notice of the danger created by the master's negligence. If the servant knew of the dangerous condition, or could· have known of it by the exercise of reasonable care, he was held to have assumed the risk incident to such danger.

Instruction No. 1, given by the court at the request of appellee, directs the jury to return a verdict for the plaintiff if certain facts enumerated therein are 3. found to be true. By this instruction the jury. was not required to find as an essential fact on which to base its verdict that appellee's decedent did not know of the dangerous condition of the wire, and that he could not have known of it by the exercise of ordinary care. Under this instruction the jury was authorized to find a verdict for the plaintiff, even though the deceased knew of the particular danger and voluntarily encountered it. If appellee's action is based on the common law, this instruction is clearly erroneous.

The common-law rule of the assumption of risk has been modified by statute in this state. Acts 1911 p. 145, §8020a *et seq.* Burns 1914. Under certain 4. conditions set out in the statute, the employe is permitted to recover even though he may have known the danger which caused his injury, or could have learned of it by the exercise of due care. This statute abrogates the common law as to the assumption of risk under the conditions specified in the statute. *Vandalia R. Co.* v. *Stillwell* (1913), 181 Ind. 267, 104 N. E. 289, Ann. Cas. 1916 D 258. On behalf of appellee it is claimed that the complaint in this case is so drawn as to bring it within the terms of this statute; that the doctrine of assumption of risk does not apply for that reason, and that therefore the instruction

under consideration was not erroneous even though it did not require the jury to find the facts showing that appellee's decedent did not assume the risk of the danger which caused his death. It is not entirely clear from the record whether appellee based her right to recover on the common law or on the statute to which we have referred. If the instruction under consideration was intended to state the essential facts necessary to a recovery at common law, it was erroneous for the reasons heretofore stated; but, if it was intended

5. to inform the jury what facts were essentially necessary to a recovery under the statute, it is erroneous for another reason. An instruction which directs a verdict for the plaintiff under this statute upon the hypothesis that the jury find certain facts from the evidence, must require the jury to find, as a prerequisite to such verdict, all the facts, as stated in the complaint, which bring the cause within the terms of such statute. Because the instruction under consideration fails in this particular, it cannot be held proper under the statute.

The objection pointed out to this instruction, and to others showing like defects, would require a reversal of the judgment were it not disclosed by the record

6. that the particular error was not prejudicial to appellant. Section 2 of the act hereinbefore cited provided that an employe shall not be held to have assumed the risk of the employment where the injury complained of resulted from his obedience to any order or direction of the employer, or to any employe to whose orders or directions he was under obligations to conform or obey. The evidence shows without dispute that appellant was engaged in operating an electrical plant by which it was furnishing electricity to the city and to divers persons for light and power, and that it employed in such business more than five persons. It

also shows without dispute that the decedent at the time he met his death was acting under the directions of appellant's superintendent, and that he went into the place of danger in obedience to orders given by him. Under such a state of the evidence decedent could not be held to have assumed the risk of the danger, for which reason an erroneous statement of the law contained in an instruction as to the assumption of risk could not have harmed appellant.

Appellant correctly asserts that other instructions bearing upon the negligence of appellant are erroneous for the reason that they impose a higher degree

7. of care than the law exacts. Under the uniform decisions of this state negligence consists in the failure to use due care, or ordinary care, which is measured by the care a person of reasonable prudence would ordinarily exercise under like conditions and circumstances. The care to be used must be commensurate with the danger; but, no matter how perilous an undertaking may be, the law exacts nothing more than ordinary care in view of the danger. Some of the instructions given imposed upon appellant a higher standard of care than the law exacts.

By the fourth instruction the jury was told that it was appellant's duty to keep the wires *perfectly* insulated, and that it must use the *utmost* care to

8. maintain them in such condition. It was the duty of appellant to exercise reasonable care to keep its wires safely insulated; and, for the purpose of determining what acts and precautions reasonable care required, the jury had a right to consider the high voltage carried by the wires and the danger incident to faulty insulation. From the language used by the court in this instruction the jury had a right to understand, and probably did understand, that something more than ordinary care was required. The same error was re-

peated and emphasized in the eighth instruction, in which the following language is used: "Very great care might be sufficient as to the wires at points where persons need not go for work or business, but the rule is different as to points where people or the employees of said defendant are expected or compelled to go in the performance of their duties. At the latter points or places the insulation or protection should be made perfect, and the utmost care used by the defendant to keep it so. So in this case, if you should find from the evidence that Philip J. Eady was in the performance of his duty as an employee of the defendant, and while performing said duty, and without any fault or negligence on his part, came in contact with said defendant's heavily charged electric wires at a point where the same were imperfectly insulated or protected, and by reason thereof received a shock of electricity from which he died, your verdict should be for the plaintiff."

In addition to the error pointed out in the fourth instruction, this instruction authorized a verdict for the plaintiff in case the jury found that one of the heavily charged wires of appellant was imperfectly insulated, and that the death of Philip J. Eady was caused by his coming in contact with such imperfectly insulated wire without fault on his part while engaged in appellant's service under his contract of employment. Appellant would not be liable unless the defect in the insulation was due to a want of reasonable care on its part, or unless the defect could have been discovered and remedied by the exercise of reasonable care in the inspection of its wires. The instruction authorizes a verdict for appellee without requiring a finding that the appellant had been negligent in either of these respects, the practical effect being to charge the appellant as an insurer as to the perfect insulation of its wires.

Some expressions may be found in a few of the later cases decided by this court and the Appellate Court which seem to recognize a standard of care applicable to the use of high-voltage electricity different from the standard of ordinary care which the law prescribes in the use of other instrumentalities. *South Bend Home Tel. Co.* v. *Beaning* (1913), 181 Ind. 586, 105 N. E. 52; *Valparaiso Lighting Co.* v. *Tyler* (1911), 177 Ind. 278, 96 N. E. 768; *Indianapolis Light, etc., Co.* v. *Dolby* (1910), 47 Ind. App. 406, 92 N. E. 739. In some of these cases it is stated that the utmost care should be used, or the highest degree of care practical under the circumstances. Such language would seem to indicate that the law in such cases imposes a duty to exercise some degree of care in excess of the care which a person of ordinary prudence would use under like circumstances and in view of the great danger incident to the agency employed; but none of such cases undertakes to fix any other standard by which to measure the care required.

In making use of the language under consideration the court appears to have lost sight of the distinction between the duty which the law imposes and the

10. conduct which ordinary care requires in order to measure up to this standard of duty. Duty is absolute, certain and unchanging. The acts, precautions and conduct which ordinary care requires to fulfill the duty are relative and variable, changing according to the conditions and circumstances of each particular case. The standard of duty is fixed by law; it is certain and definite and must be declared by the court; the requirements of ordinary care vary with conditions and circumstances of each case and must be determined as matters of fact. It is the legal duty of the master

11. to use reasonable care for the safety of his servant whether the agencies employed in his business be

comparatively safe or extremely dangerous. The standard fixed by law is the same in both cases—that is such care as a person of ordinary prudence would use under like circumstances. However, the acts of care and precaution which ordinary prudence requires are to be determined as matters of fact from consideration of the danger incident to the use of the agency employed, as well as from other circumstances and conditions. *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co.* (1914), 57 Ind. App. 644, 104 N. E. 866, 106 N. E. 739; *Louisville, etc., Traction Co.* v. *Walker* (1911), 177 Ind. 38, 97 N. E. 151.

From a consideration of the legal principles bearing upon this question it seems clear that the standard of care fixed by law does not change or vary in different cases, even though the danger to be guarded against may be shown to be extreme in the one case, and only slight in the other. The standard fixed is constant and unvarying, as all standards fixed by law must necessarily be; but the extent of the danger is a proper matter to be considered by the tryers of the fact in determining what acts of care and precaution ordinary prudence requires in order to bring the conduct of the defendant up to the standard of the conduct of a person of ordinary prudence acting under like circumstances.

The later expressions of this court to the effect that the law fixes some standard of care for the conduct of those using high-voltage electricity in their business which is in excess of reasonable care under the circumstances, seems to be an innovation. They seem to find no support in any of the former decisions of this court, and little, if any, support from the decisions of any other state. The first case in this state in which such an expression occurs is that of the *Indianapolis Light, etc., Co.* v. *Dolby, supra.* According to the opinion

it is shown by the facts that a policeman was killed when using a telephone by a high current of electricity generated by appellant company, which current had in some way been conducted to the telephone instrument. The decision is: that proof of such facts was sufficient to make a *prima facie* case of negligence against appellant company. A verdict may be based upon such *prima facie* case in the absence of evidence to the contrary, but such *prima facie* case may be met by evidence of care on the part of the defendant, in which event the issue of fact as to whether or not the defendant exercised reasonable care under the circumstances is presented for decision. The only question decided in that case was that the maxim *res ipsa loquitor* applied under the facts stated, and all the cases cited sustain the decision of the court on that point. The question involved in that decision did not require the court to determine what standard of care the law prescribed in such a case, and, for this reason, the observations of the learned judge who wrote the opinion indicating his belief that some standard higher than that of reasonable care should be applied in measuring the conduct of those employing high-voltage electricity in their business must be regarded as *obiter dictum*. None of the cases cited sustain this dictum except a statement which is itself dictum in the opinion in the case of *Simmons* v. *Shreveport Gas, etc., Co.* (1906), 116 La. 1033, 41 South. 248. The dictum in the case of *Indianapolis Light, etc., Co.* v. *Dolby, supra,* was adopted in the case of *Valparaiso Lighting Co.* v. *Tyler, supra,* and later followed in *South Bend Home Tel. Co.* v. *Beaning, supra,* thus gaining a respectable foothold. After careful consideration the court is convinced that neither principle nor precedent warrants the adoption of any standard of care in cases of this character other than such care as

a person of reasonable prudence would ordinarily use under like conditions and circumstances, the standard long since adopted and uniformly approved. *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co., supra; Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181; *Pennsylvania Co.* v. *Whitcomb* (1887), 111 Ind. 212, 12 N. E. 380; *Henry* v. *Prendergast* (1912), 51 Ind. App. 43, 94 N. E. 1015.

Under §700 Burns 1914, §658 R. S. 1881, it has been frequently held that errors committed in giving instructions will not be regarded as cause for reversal when it appears that such errors did not affect the result. The instructions last considered were directed to the question of negligence on the part of appellant, and the errors in such instructions could not have affected the finding of the jury on any other issue of fact. In considering the effect of an erroneous instruction this court assumes that the error influenced the result, unless it appears from the interrogatories, the evidence, or some other part of the record, that the verdict under proper instructions could not have been different. If the court can ascertain from the record in this case that a finding in favor of appellant on the issue of its negligence could not be justified, then it is safe in saying that an erroneous instruction bearing upon that issue was harmless. The interrogatories, as well as the undisputed evidence, show that decedent was killed by a current of high-voltage electricity which he received from the wires owned and used by appellant in distributing electricity. This is sufficient, under the authorities, to make a *prima facie* case of negligence against appellant, unless the relation of master and servant which existed in this case prevents the application of the maxim *res ipsa loquitor.* It has been repeatedly held that the maxim applies in favor of persons injured or killed by electricity on pub-

lic highways and in private grounds where no relation of master and servant existed. *Boyd* v. *Portland Electric Co.* (1901), 40 Ore. 126, 66 Pac. 576, 57 L. R. A. 619; *Walter* v. *Baltimore Electric Co.* (1909), 109 Md. 513, 71 Atl. 953, 22 L. R. A. (N. S.) 1178; *Alexander* v. *Nanticoke Light Co.* (1904), 209 Pa. 571, 58 Atl. 1068, 67 L. R. A. 475; note to *Western Coal, etc., Co.* v. *Garner,* 22 L. R. A. (N. S.) 1183.

In cases growing out of the relation of master and servant it has been held that the maxim did not apply, for the reason that the injury might in such a case result from a risk assumed by the servant under his contract, or from the negligence of a fellow servant, in either of which events the injury could not be attributed to the negligence of the master. In most, if not all, cases in the federal courts it is held that the maxim does not apply as between master and servant, and many of the state courts refuse to apply the maxim in like cases. However, other state cases hold that the existence of the relation of master and servant limits, but does not exclude, the application of the maxim in such cases. Note to *Fitzgerald* v. *Southern R. Co.,* 6 L. R. A. (N. S.) 337, and cases there collected.

The maxim is generally held to apply only where the accident which caused the injury grew out of the operation of some instrumentality entirely under the control of the defendant, and where the accident was such as does not ordinarily occur except in the absence of due care. The character of the accident should be such as not only to indicate a want of care on the part of the defendant, but also to exclude all other probable causes. Under the common law a master was not responsible to his servant for an injury resulting from a risk which the servant assumed by his employment, or which resulted from the negligence of a fellow servant of the injured employe.

These exceptions to liability of the master furnished the principal reason for the recognized distinction in the application of the maxim between cases in which the relation of master and servant existed and other cases not involving that relation. It must follow that, in cases where the reason for the distinction does not exist, the distinction should not be recognized. Section one of the Employers' Liability Act, heretofore cited, expressly abrogates the fellow-servant rule in cases of the class to which this belongs; and the facts of this case, as heretofore shown, bring it within the provisions of the same act, which relieved decedent from the assumption of the risk of the danger which caused his death. The court accordingly holds that the maxim *res ipsa loquitor* applied in this case, and that proof that decedent was killed by a current of electricity communicated to his body from one of defendant's high-voltage wires made a *prima facie* case of negligence against appellant. This *prima facie* case was not met by any evidence to show care on the part of the defendant in the insulation and inspection of its wires. On the contrary, the evidence shows without dispute that the insulation was worn off of the high-voltage wire at the place where it came in contact with the hand of decedent, and that its condition was such as to be easily observed. Besides, the superintendent testified that he knew that there had been trouble at that place before he ordered the transformer to be placed on that pole. A *prima facie* case must always prevail in the absence of countervailing proof. By failing to introduce any evidence to meet the *prima facie* case made by appellee, appellant stood convicted of negligence as a matter of law. The rights of appellant, therefore, could not have been injuriously affected by any instructions on the subject of its negli-

gence, however erroneous such instructions may have been.

Judgment affirmed.

Spencer, J., concurs in conclusion.

## CONCURRING OPINION.

SPENCER, J.—I concur in the conclusion reached in the majority opinion herein but desire briefly to refer to that part of such opinion which undertakes to distinguish certain other decisions of this and the Appellate Court in cases of the same class. It seems to me that the criticism of the cases referred to is based merely on language used by the writer of the opinion in the particular instance rather than on the substance of the decision. While some of the cases contain expressions which suggest that those who are responsible for the proper maintenance of electrical apparatus are bound to exercise a high degree of care in respect thereto, they are not to be taken as announcing a different *standard* to be observed in such maintenance but rather as emphasizing the fact that under the circumstances which attend the use of so dangerous an agency as high-voltage electricity, "reasonable care" contemplates the exercise of great vigilance in guarding against injury to those who may come in contact with instrumentalities which are charged with such invisible and deadly power. The majority opinion recognizes and holds that the care to be used under such circumstances must be commensurate with the danger involved, and on reference to the decisions which are discussed in that opinion, and others of similar import, it will appear in each case that the actual holding invokes no other rule.

NOTE.—Reported in 115 N. E. 577. Applicability of the doctrine of assumption of risk to a lineman, 15 Ann. Cas. 598; Ann. Cas. 1912 B 467. Assumption of risk, basis of rule, 131 Am. St.

437. Liability of municipal corporation for negligence in the operation of a public utility, 9 Ann. Cas. 851; Ann. Cas. 1912B 817. See under (2) 26 Cyc 1415; (4) 26 Cyc 1180; (7) 29 Cyc 428; (10) 29 Cyc 635; (11) 26 Cyc 1077; (13) 15 Cyc 472; (16) 15 Cyc 478; (17) 29 Cyc 591.